J. H. Tedens et al.

v.

J. B. Schumers.

</div>

1. Preponderance of evidence.—After examining with care the entire evidence as presented in the bill of exceptions, while the court might have been better satisfied with a different result, yet the court is unable to

say that the verdict is so far against the preponderance of the evidence as to make it its duty to reverse the judgment for that reason. . The evidence was so far conflicting as to present a fair question of fact for the jury and their decision should be regarded as final.

2. EVIDENCE INVOLVING MORAL TURPITUDE—ADMISSION OF EVIDENCE AS TO CHARACTER.—Where defendants, to maintain their defense of accord and satisfaction to a certain due-bill given to plaintiff and held by them, gave evidence, among other things, of the plaintiff's admissions to them and to their witnesses of the alleged larceny or embezzlement by him of their goods, and plaintiff was called as a witness in rebuttal and denied each and all of said admissions and called witnesses who, against defendants' objection and exception, were permitted to testify that plaintiff's general reputation for truth and veracity was good. *Held*, that such evidence was admissible. A mere contradiction in the testimony of two witnesses does not necessarily involve the moral character of either, and will not alone authorize the admission of evidence as to their general good character for truth; but evidence tending to charge a witness with crime or other moral turpitude constitutes such an impeachment as warrants the admission of evidence as to the witness' character for truth.

APPEAL from the Circuit Court of Cook county; the Hon. JOHN G. ROGERS, Judge, presiding. Opinion filed April 15, 1883.

Mr. EDWARD F. COMSTOCK, for appellants; that where the verdict is manifestly against the evidence, the judgment should be reversed, cited Brown v. Kragel, 2 Bradwell, 414; Adier v. Uchtman, 10 Bradwell, 488; Brown v. Pilley, 10 Bradwell, 103.

As there was no attempt at impeachment, it was error to admit evidence of the witness' good reputation: Gough v. St. John, 16 Wend. 645; McBean v. Fox, 1 Bradwell, 177.

Messrs. MINARD & SKELLY, for appellee.

BAILEY, J. This was a suit in assumpsit, brought by Schumers against Tedens and Thormahlen, to recover the amount of a due-bill for $2,100, given by the defendants to the plaintiff, bearing date June 1, 1879. It appears that, for a number of years prior to that date, the plaintiff was in the employ of the defendants in their store at Lemont, Cook county, Ill., as a clerk or salesman, and that during that time he had left in their hands such portion of his salary as he did not use, they

Tedens et al. v. Schumers.

crediting him annually with interest thereon at the rate of eight per cent. per annum, and that on said first day of June, 1879, they figured up the amount due the plaintiff, and found it to be said sum of $2,100. For this sum the due-bill was given, payable on return of said paper to the defendants, and drawing interest at the rate of eight per cent. per annum in case said money remained in the defendants' hands one year.

About March, 1880, the defendants claim to have discovered that goods were being taken from their store by some person, for which no account was being rendered, and that after watching for a considerable time, they satisfied themselves that the plaintiff was the guilty party; that on being charged with the theft, he admitted it and confessed that he had been stealing goods from their store, from time to time, for nearly four years; that he had kept no account of the goods taken, and could not tell the amount, but that from the best estimate the defendants were able to form, the aggregate must have been considerably larger than the amount of said due-bill; that the plaintiff thereupon offered to surrender to the defendants everything he had in the world to settle the matter, but that it was finally agreed that he should give up to them said due-bill, and that said due-bill should be received by them in full satisfaction of their claim against him for the goods stolen, and that it was surrendered to them by him in pursuance of that agreement. These facts were sworn to by the defendants, and two other witnesses were produced by them who testified to admissions by the plaintiff of said thefts, and of said settlement and surrender of the due-bill to the defendants.

The plaintiff, on the other hand, denied said thefts, and also denied the confessions sworn to by the defendants and their witnesses, and testified in substance that several years prior to the date of the due-bill he applied to one of the defendants for an increase of salary, which was refused, but that in lieu thereof said defendant agreed to allow him to take from the store, at cost, all such goods as he might need for his own use; that all the goods taken by him were taken

under that arrangement, and were paid for by him at cost price; that when the defendants charged him with said thefts he explained the arrangement under which the goods were taken by him, and that they denied that any such arrangement existed; that they demanded of him the due-bill, and that to avoid having the charge of larceny against him made public, he gave it to them on the express condition, to which they agreed, that they should make an investigation of the matter of the goods taken by him as aforesaid, and if anything was due from him to them on account of the goods he had taken, they should apply the same on the due-bill and pay him the residue.

On this evidence the jury found the issues for the plaintiff and assessed his damages at $2,758, the full amount of the due-bill with interest. One half of this sum the plaintiff remitted, and had judgment for the residue, viz., $1,379 and costs.

It is urged that this verdict was against the clear preponderance of the evidence. We have examined with care the entire evidence as preserved in the bill of exceptions, and while we might possibly have been better satisfied with a different result, we are unable to say that the verdict is so far against the preponderance of the evidence as to make it our duty to reverse the judgment for that reason. The evidence was so far conflicting as to present a fair question of fact for the jury, and their decision should be regarded as final.

Another question arose upon the admission of certain evidence, which we deem it necessary to consider more at length. The plaintiff, as part of his case in chief, by way of explaining the possession of the due-bill by the defendants, testified to the circumstances of its delivery to them as above set forth, and thereupon the defendants, to maintain their defense of accord and satisfaction, gave evidence, among other things, of the plaintiff's admission to them and to their witnesses of the alleged larceny or embezzlement by him of their goods. The plaintiff was then called as a witness in rebuttal, and denied each and all of said admissions. He then called two witnesses as to his general reputation for truth and

Tedens et al. v. Schumers.

veracity, and said witnesses, against the objection and exception of the defendants, were permitted to testify that his general reputation for truth and veracity was good.

Counsel for the plaintiff attempt to justify the admission of this evidence upon the ground that the proof made by the defendants of the plaintiff's statements on former occasions, at variance with his testimony on the trial, had a direct tendency to impeach his veracity, and thus rendered evidence of his general character in that respect admissible. In this we think they are in error. The usual mode of impeaching a witness, by proving his statements out of court variant from his testimony at the trial, is by asking him on cross-examination as to such former statements, and if he fails to admit them, to then make proof of such statements by other competent evidence. Here the plaintiff's admissions were not proved by way of showing statements out of court variant from his testimony at the trial, but as admissions of a party to the suit and as evidence in chief in support of the issues on the part of the defendants. The contradiction was made to appear after the statements out of court had been proved, and then not from questions put to the witness on cross-examination, but from such as were put to him by his own counsel, when recalled in rebuttal.

An attempt to impeach a witness is a submission to the jury by the party attempting the impeachment of a collateral issue as to the veracity of the witness, and such issue can not be raised or submitted by the party who puts the witness on the stand. By calling the witness he assumes, or vouches, for his general good character for veracity, and he is thereby precluded from raising that question. It is for the other side, and for him alone, to determine whether that character shall be assailed, and the issue can not be forced upon him by any questions put to the witness by the party producing him.

All that can be said in this case, so far as this mode of impeachment is concerned is, that there is a contradiction between the plaintiff and the witnesses for the defendants, as to a fact material to the issues. A mere contradiction in the testimony of two witnesses does not necessarily involve the moral

character of either, and will not alone authorize the admission of evidence as to their general good character for truth.  Vernon v. Tucker, 30 Md. 456.  As said in Russell v. Coffin, 8 Pick. 143.  " It never was decided that if a witness was contradicted as to any fact of his testimony, either by his own declarations at other times, or by other witnesses, evidence might be admitted to prove his general good character.  If this were the practice, great delay and confusion would arise, and as almost all cases are tried upon controverted testimony, each witness must bring his compurgators to support him when he is contradicted, and it would be a trial of the witnesses and not of the action."  See also, People v. Hulls, 3 Hill, 309; Starks v. The People, 5 Denio, 103; M. & R. R. R. Co. v. Williams, 54 Ala. 168; Werts v. May, 21 Penn. St. 274; Braddee v. Brownfield, 9 Watts, 124; Rogers v. Moore, 10 Conn. 13; Johnson v. The State, 21 Ind. 329; People v. Gay, 7 N. Y, 378; People v. Rector, 19 Wend. 569.

But there is another ground upon which we think the evidence of the plaintiff's general good character for truth was clearly admissible.  The evidence which had been introduced by the defendants tended to prove that the plaintiff was guilty of the crime of larceny, committed not only once, but again and again, through a period of nearly four years.  The evidence consisted of the plaintiff's confessions, and if the account given of them by the defendants' witnesses was to be believed, it was evidence against the plaintiff of a very convincing character.  The crime thus imputed to him involved him in gross moral turpitude, and was therefore a serious impeachment of his general moral character, and manifestly could not but have an unfavorable effect upon his credibility.

While the authorities are not harmonious as to whether evidence tending to charge a witness with crime or other moral turpitude constitutes such an impeachment as warrants the admission of evidence as to the witness' character for truth, we think the better rule, and the one supported both by reason and by authorities of great respectability, is in favor of the admission of such evidence.  Mr. Wharton, in his treatise on the Law of Evidence, in specifying the cases in

which evidence of this character may be admitted, says: "*A fortiori* is this the case where the opposing party introduces, as a part of his case, evidence directly reflecting on the veracity of the witness." 1 Whart. on Ev., Sec. 569.

In George v. Pilcher, 28 Grat. 299, the question at issue was whether a marriage between certain parties had been solemnized, and the officer by whom it was alleged that the parties were married, being called as a witness, testified to having solemnized the marriage and identified his official marriage certificate made by him at the time. The party disputing the marriage not only denied in his pleadings that it had taken place, and characterized said certificate as a base fabrication, but his counsel repeated said charges in his opening address to the jury. On the trial, the witness was subjected to a searching cross-examination, with the evident object of throwing discredit upon his testimony. The court, in holding that under these circumstances evidence of the witness' general reputation for truth was competent, say: "The attempted disproof of the marriage and of the certificate given by the witness, was a charge upon the record, and before the jury, that he was guilty of fraud, conspiracy, forgery and perjury; and if the party calling a witness, who is thus attempted to be impeached, can not sustain him by evidence of good character for truth, we can not conceive of a case where such evidence would be admissible."

In Paine v. Tilden, 20 Vt. 554, the court, by Redfield, J., say: "It is now well settled, that, whenever the character of a witness for truth is attacked in any way, it is competent for the party calling him to give general evidence in support of the good character ot the witness." In Carter v. The People, 2 Hill, 317, where, upon the trial of an indictment, a material witness for the prisoner, on his cross-examination, admitted that he had been complained of and bound over upon a charge of passing counterfeit money, it was held that in answer the prisoner was entitled to give evidence of the witness' good character for truth.

In Davis v. The State, 38 Md. 15, the court say: "Mere contradiction among witnesses furnishes no ground, as a gen-

eral rule, for admitting general evidence as to their character; though, if fraud or other improper conduct be imputed to any of them, such evidence will be received."

Where, on a trial for murder, the defendant gave evidence tending to show that one of the people's witnesses was suborned, and had been paid for his testimony, the prosecution was permitted in rebuttal to introduce testimony as to the character of the witness for truth and veracity. In discussing the nature of the impeaching testimony, the court say: " It was as effectual an attack upon the character of the witness for truth, as if his reputation in this respect had been assailed by direct inquiries; and we can see no good reason for allowing proof of good character in the latter case that does not apply as well to the case before us." The People v. Ah Fat, 48 Cal. 61.

So, also, where a defendant proves that a witness called for the prosecution has been convicted for a felony, it is an assault upon the character of the witness for integrity and truth, and the prosecution may, in rebuttal, examine witnesses to prove that the reputation of the witness for truth and integrity is good in the community where he resides. The People v. Amanacus, 50 Cal. 233.

In the light of these decisions, and of the common experience of mankind as well, it seems clear that evidence tending to establish the plaintiff's guilt of the crime of larceny, and that, too, repeated many times, was as effectual an attack upon his character for truth as any other impeaching evidence would be. If it be true that he is a man so devoid of honesty and integrity as to be guilty of such offenses, it needs no argument to show that evidence coming from him comes from a polluted source, and is not to be relied upon. The only security for its truth is the chance, in the mind of the witness, of detection and punishment in case he swears falsely. It is bereft of the highest sanction and greatest safeguard, a good conscience and an honest purpose.

The rule undoubtedly is, that a party attempting to impeach a witness is restricted to general evidence of character, and will not be permitted to prove particular acts of the wit-

ness.   This is a limitation upon the right of impeachment, adopted, not because proof of specific acts may not constitute as effectual an attack upon the credibility of the witness as proof of his general character, but solely out of consideration for the witness himself, it being assumed that, while every man should be prepared at all times to defend his general character, it would be imposing upon him an intolerable burden to require him to be in readiness on all occasions to defend or explain every act of his whole life.   But where, as in this case, evidence of specific acts involving moral turpitude becomes competent and admissible as maintaining the principal issues in the case, it has no less a tendency to discredit the witness than it would have if admitted for that sole and express purpose; and it would be a strange and illogical converse of the rule above mentioned that would deprive the witness of the right to defend his character against proof of specific acts, where the opposite party succeeds in 'getting such evidence before the jury because of its competency for other purposes.   Our conclusion is, that in this case evidence of the general reputation of the plaintiff was competent, and that no error was committed in admitting it.

Some complaint is made of the rulings of the court in the instructions to the jury.   We are unable to find any material error in that respect.   There being no error in the record, the judgment will be affirmed.

<div align="right">Judgment affirmed.</div>