Filed Jan. 25, 1884.

---

No. 11,058.

## HULL v. STATE, EX REL. DICKEY.

BASTARDY.—*Evidence.*—When the testimony in a bastardy case shows that a fully developed child was born eight months after the defendant had connection with the relatrix, and fails to show any connection with any other person about that time, the court can not say from the appearance of such child that it must have been begotten before the defendant had connection with the relatrix, and consequently was not begotten by him.

SAME.—The admission of testimony, that the defendant had connection with the relatrix a year or two before the child was begotten, is rendered unnecessary when the defendant admits. his connection with the , relatrix about the time the child was begotten.

SAME.—A mere inquiry of the defendant as to an excuse for leaving the relatrix at a certain time does him no injury when such act is denied.

Hull *v.* State, *ex rel.* Dickey.

SAME.—*Cross-Examination of Relatrix.*—An inquiry upon the cross-examination of the relatrix as to the color of the child's hair and eyes was properly excluded, as such evidence was affirmative in its character and not within the scope of the cross-examination.

SAME.—*Witness.*—*Impeachment.*—When the defendant in such case calls a witness to prove that the witness had connection with the relatrix about the time the child was begotten, and the witness denies such intercourse, the defendant can not impeach such witness by proving that he has made statements in contradiction of his present testimony.

From the Jennings Circuit Court.

*J. O. Cravens,* for appellant.

*D. Overmyer* and *W. G. Holland,* for appellee.

BEST, C.—This was a prosecution for bastardy. The cause was tried by a jury. Verdict and judgment for the State. A motion for a new trial was overruled, and this ruling is assigned as error.

This motion embraced many reasons, but we will only consider those mentioned in appellant's brief.

It is first insisted that the verdict is contrary to the evidence. This position is based upon the assumption that the case made by the State was completely overthrown by the appellant's testimony, and hence the verdict was contrary to the evidence. The question made thus arises. The relatrix's child was born on the 27th day of September, 1882, and she testified that it was begotten about the first of the previous February; that the appellant was the father of the child, and that no other person had sexual intercourse with her about the time the child was begotten. The appellant admitted that he had intercourse with her on the night of January 30th, 1882, and a number of times within ten days thereafter, but denied that he had any connection with her at any other time during the month of January. The testimony further showed that criminal relations had existed between these parties for two or three years previous to this time, but failed to show that any acts of intercourse had occurred between them within two or three months immediately preceding the time when

this child was begotten. This testimony, considered alone, was abundantly sufficient to establish the paternity of this child. This the appellant concedes, but he offered testimony to show that the child, at its birth, had gone the full period of gestation, and, assuming such fact to have been established, he insists that it must have been begotten before the 30th of January, and therefore he is not shown to be the father of the child. The testimony introduced to establish the duration of the period of gestation consisted of the statements of an attending physician as to the appearance and general development of the child at its birth, together with the opinions of physicians that the appearance and general development described indicated that such child had gone the full period of gestation. Upon this proposition, however, all the physicians examined did not agree that it could be reliably determined, from these things alone, whether the period of gestation was eight or nine months.

This is the case made by the record upon this point, and it is, as it seems to us, obvious from its mere statement that we can not disturb the verdict of the jury upon this question of fact. The testimony of the relatrix that the child was begotten by the appellant about the first of February, 1882, and his admission that he had connection with her at that time, were certainly sufficient, in the absence of any evidence that any other person ever had connection with her, to fix the charge upon him, and as the child was born about eight months thereafter, we can not say that the testimony as to its appearance and general development at birth shows that it was not then begotten by him. If it were conceded that the testimony upon this question furnished a fair preponderance in his favor, this would not authorize us to disturb the judgment, as this will not be done where the evidence legally tends to support the verdict. This is the general rule, and is applicable to a case where a party insists that his testimony overcomes the case made by his adversary. Applying this rule to the question under discussion, we can not say that the verdict is

contrary to the evidence, and, therefore, can not disturb the judgment upon this ground.

It is next insisted that the court erred in permitting the State to prove acts of intimacy between the appellant and the relatrix a year or two previous to the time this child was begotten. Proof of such acts is generally admissible for the purpose of lending probability to the testimony of the relatrix that the appellant had connection with her at the time the child was begotten. This testimony, however, was wholly unnecessary in this case, as the appellant admitted such acts of intercourse, and this admission rendered the testimony harmless if erroneous. The admission of the appellant that he had intercourse with the relatrix about the time the child was begotten was sufficient to establish such fact, and as the introduction of other testimony only tending to establish the same fact could not possibly harm him, no available error was committed in its admission if otherwise wrongful.

On the 30th of January, 1882, the appellant took the relatrix with him to Richmond, in this State, and there remained with her at a hotel for ten days, at the expiration of which time he left her and went to his home. Upon his examination the State was permitted to ask him if he did not, as an excuse for leaving the relatrix, arrange with a colored man at the hotel to make a statement that there were two persons there who were about to arrest him, and it is insisted that this ruling was wrong. We can not see its relevancy, nor can we see how the appellant was injured by it. He denied having made the arrangement, and the mere inquiry did not, as we think, affect him injuriously, and, therefore, this ruling furnishes no reason for the reversal of the judgment.

Upon the cross-examination of the relatrix, the appellant propounded to her this question: "What is the color of the child's hair and eyes?" and proposed to prove by her, in connection therewith, that their color was different from the color of the hair and eyes of the relatrix, the appellant, and their parents. This question was excluded, and the appellant com-

plains of the ruling. This ruling was right. The inquiry was not proper upon cross-examination, and, if for no other reason, the question was properly excluded upon such ground. The evidence was affirmative in its character, and was not within the scope of the cross-examination. If there had been any question as to the existence of the child, possibly such inquiry would have been admissible, but the offer to prove the color of the hair and eyes of the relatrix, the appellant and their parents, shows conclusively that the inquiry was not made for any such purpose, but for the purpose of establishing a defence by affirmative matter. No error was, therefore, committed by this ruling.

.The appellant .called Scott McNew as a witness, and sought to prove by him that he, the witness, had sexual intercourse with the relatrix about the time the child was begotten. This the witness denied, and thereupon the appellant asked the witness if he had not, at a certain time and place, stated to several persons that he had had 'sexual intercourse with the relatrix about the time the child was begotten. This question, upon objection, was excluded, and this ruling the appellant insists ·was error. The evident purpose of this inquiry was to impeach this witness by proof of statements made out of court, and the appellant contends that though he had called the witness he was entitled to thus impeach him under section 507, R. S. 1881. This section provides that " The party producing a witness shall not be allowed to impeach his credit by evidence of bad character, unless it was indispensable that the party should produce him, or in case of manifest surprise, when the party shall have this right; but he may, in all cases, contradict him by other evidence, and by showing that he has made statements different from his present testimony."

The last clause of this section, it is insisted, authorized the appellant to prove these statements, and therefore he was entitled to make the above inquiry in order to lay the proper foundation for the impeachment of the witness. If not authorized to thus impeach his witness, he was not entitled to

Hull *v.* State, *ex rel.* Dickey.

make the inquiry, and hence the correctness of the ruling depends upon his right to make proof of such statements. This right depends upon the proper construction of this clause of the statute. If the term "testimony" embraces everything a witness may say upon the stand, the appellant is right, but if it only embraces such statements as are prejudicial to the party calling the witness, the appellant is wrong. In view of the fact that the purpose of the statute is to enable a party to thus impeach his witness, and thereby rid himself of damaging testimony, we think the term must be so limited. Where a witness does not testify to anything prejudicial to the party calling him, there can be no object in impeaching him, and hence the statute can not apply to such case. Nor can it apply to a case where a witness fails to testify to such facts as he is called to prove. Such testimony, though not beneficial, is not prejudicial, and therefore no reason exists for impeaching the witness.

In *Champ* v. *Commonwealth*, 2 Metcalf (Ky.) 17, the Court of Appeals of Kentucky, in discussing the same question under a similar statute, says: "The obvious meaning of the rule is, that where a witness states a fact prejudicial to the party calling him, the latter may be allowed to show that such fact does not exist, by proving that the witness had made statements to others inconsistent with his present testimony. But a case like the present, where the witness does not state any fact prejudicial to the party calling him, but only fails to prove facts supposed to be beneficial to the party, is not within the reason or policy of the rule, and the witness can not be contradicted in such case by evidence that he had previously stated the same facts to others."

This extract, as it seems to us, accurately expresses the rule upon this question. The statute must necessarily be so construed. Its purpose is to relieve a party from the prejudicial statements of his own witnesses. It introduces a new method of impeachment. Before its adoption a party could thus impeach his adversary's witnesses. This was not done,

however, unless their testimony was prejudicial to him. If so, he could thus disprove their statements. His own witnesses may make like statements, and this statute enables him to disprove them in the same way. Surely, it was not intended that a party may impeach his own witnesses, where they testify favorably or fail to thus testify. This would, indeed, be an idle and useless ceremony. It could accomplish no good, and might work great harm. No fact having been stated, none could be disproved, and as the jury might regard these statements as substantial proof of the fact sought to be established, great harm might result, as they are clearly inadmissible for any such purpose. The statute therefore did not, as we think, authorize the appellant to prove these statements, and therefore the court did not err in excluding the inquiry.

This disposes of all the questions urged by appellant, and as we are of opinion that there is no error in the record the judgment should be affirmed.

PER CURIAM.—It is therefore ordered, upon the foregoing opinion, that the judgment be and is hereby in all things affirmed, at appellant's costs.

Filed Jan. 26, 1884.