## No. 388.

### DIFFENDERFER, EXECUTRIX, *v.* SCOTT, BY NEXT FRIEND.

DECEDENTS' ESTATES.—*Claim Against.*—*Evidence.*—W. executed and delivered to J. S. her promissory note payable to J. S. or A. S., her child. The consideration for the execution of the note was the naming of the child A. S., after W. W. died, having devised and bequeathed all of her estate to R., her sister. The will of W. was admitted to probate, and her estate finally settled. R. died testate, and by will appointed the defendant as her executrix. A. S., who was an infant at the time W.'s estate was settled, and at the time the claim in controversy was filed, having become by assignment the sole owner of said note, filed a claim against R.'s estate based upon the note.

*Held,* that upon the hearing of the claim the will of R. was properly read in evidence, it being sought to charge her estate with the payment of the note upon the theory that she was the devisee of W., and her will disposing of the property devised to her by W. being evidence of her acceptance of the devise.

SAME.—*Real Party in Interest.*—*Infancy.*—Where the note was made payable to J. S. or A. S., her child, and the consideration moved from J. S., and she conducted the negotiations with the maker exclusively, and it was delivered to J. S. "to be taken care of" for A. S., and was to be applied in educating the latter, the legal title to the note was never in J. S. exclusively. She was but an alternative payee, and the legal title was no more in her than in A. S., who was the equitable owner of it. Under the code of this State the right of action upon the note was always in A. S. as the real party in interest, and on account of her infancy she was not precluded by the settlement of the estate of W. from proceeding against the estate of R.

SAME.—*Witness.*—*Impeachment of.*—Where J. S., one of the payees of the note, was introduced as a witness by the defendant, the credit of the witness could not be impeached by proof of bad character. The defendant was under no obligation to introduce her as a witness, and had no reason to expect favorable testimony from her. See section 507, R. S. 1881.

WITNESS.—*Impeachment of One's Own Witness.*—*Contradictory Statements.*—A party has the right to impeach his own witness, who has testified against him, by proof of contradictory statements, but it is always necessary to lay the foundation for impeachment by calling the attention of the witness who is sought to be impeached to the time and place of the statement, so he may have the opportunity of admitting or denying it intelligently.

Diffenderfer, Executrix, *v.* Scott, by Next Friend.

SAME.— *Unavailable Offer to Prove.*— Where, in an offer to prove contradictory statements made by a witness, the names of several persons are included by whom it is asserted such proof can be made, but none of them are called to the stand, no question is saved.

SAME.—*Contradiction of Imputing Moral Turpitude.*—*Evidence of Good Character to Support Witness.*—*Inadmissibility of.*—A witness who is contradicted by other evidence upon a direct issue in a case, can not be supported by proof of good character, even when the contradiction imputes moral turpitude or the commission of a crime. Character is not in issue, in contemplation of the law, so as to admit supporting evidence unless the witness is impeached directly by some method recognized by the rules of evidence. A witness who has not been so impeached, but who is nevertheless supported by evidence of good character, is very apt to be credited by the jury with a standing above that given to other witnesses who are not so supported, and the admission of the evidence is reversible error. *Fisher* v. *Hamilton*, 49 Ind. 341, distinguished.

From the Allen Circuit Court.

*C. A. Worden* and *J. J. Morris*, for appellant.

*R. Lowry* and *M. V. B. Spencer*, for appellee.

CRUMPACKER, J.—Almira Scott, an infant, by Julia A. Scott, her next friend, filed a claim against Isabella Diffenderfer, executrix of the will of Ruth M. Wells, deceased, based upon a promissory note for the sum of $3,000 and interest.

It is alleged in the statement of the claim that on the 15th day of January, 1885, Almira Wells executed and delivered her certain promissory note to Julia A. Scott, payable at the Old National Bank, of Ft. Wayne, Indiana, to Julia A. Scott, or Almira Scott, her child, in seven years, with eight per cent. interest " and attorney's fees "; that said Julia A. Scott assigned said note to the claimant by endorsement; that on the 21st day of June, 1886, said Almira Wells died testate in Allen county, Indiana, having devised and bequeathed all of her estate to Ruth M. Wells, her sister; that the will of said Almira was duly admitted to probate in said county and her estate was settled thereunder in the Allen Circuit Court, the final settlement being made in November, 1887; that the claimant was, for six months before said set-

tlement and still is, an infant; that said Ruth M. Wells received property under the will of said Almira of the value of twelve thousand dollars; that said Ruth M. Wells died testate in said county on the 2d day of October, 1889, and by will appointed the defendant her executrix, which will was duly probated and the executrix took upon herself the duties of the trust. A copy of the note was filed with the statement, and is according to the tenor following:

"$3,000. FORT WAYNE, January 15th, 1885.

" Seven years after date I promise to pay to the order of either Julia A. Scott or Almira Scott, her child, three thousand dollars, at the Old National Bank, of Fort Wayne, Indiana. For value received, without any relief whatever from valuation or appraisement laws, with eight per cent. interest from ———— until paid and attorney's fees. The drawer and endorser severally waive presentment for payment protest and notice of protest and non-payment of this note. ALMIRA WELLS."

An answer of the general denial formed the issues, and the cause was tried by a jury. A verdict was returned in favor of the claimant for $4,765, upon which judgment was rendered. The executrix appeals and relies for a reversal of the judgment upon causes assigned in the motion for a new trial.

The evidence disclosed that at the time the note was given Almira and Ruth M. Wells were aged spinsters, living together in the city of Fort Wayne, and Julia A. Scott with her family lived near them. Appellee was born of Julia A. Scott on the 29th day of January, 1884. There was evidence tending to show that several months prior to the birth of appellee Mrs. Scott and Almira Wells held conversations upon the subject of giving the prospective babe the name of "Almira," if it could be done with deference to its sex, in honor of Almira Wells, the latter promising in that event to provide for the education of the child. After the birth, Almira Wells renewed her request and promises and in con-

sideration thereof, when appellee was several weeks old, she was named "Almira," and on the 15th day of January, 1885, the note in controversy was given by Almira Wells in pursuance of her agreement to provide for appellee. The note was delivered to Mrs. Scott for appellee's benefit, and about three weeks before the claim was filed, Mrs. Scott assigned her interest in the note to appellee.

Almira Wells died in 1886, leaving her entire estate, valued at about $12,000, to Ruth M. Wells, her sister. Her estate was settled in the Allen Circuit Court, finally, in November, 1887. No claim was filed against the estate for the note in question. Ruth M. Wells died in 1889 testate, leaving considerable portions of her estate to public charities.

Three grounds of defence were insisted upon at the trial, viz.: *First.* The note was not genuine. *Second.* If genuine, the note was given to Julia A. Scott in trust for the appellee, and action upon it was barred by the settlement of the estate of Almira Wells, and *Third.* The note was not supported by a sufficient consideration.

The last ground is not urged in this court, and under the decision of *Wolford* v. *Powers*, 85 Ind. 294, the naming of appellee would be an adequate consideration for the note.

There was evidence justifying the conclusion that appellee was named in consideration of the promise of Almira Wells to provide for her education, but the amount and character of the provision were not settled upon until about ten months afterwards—the time the note was given. The negotiations were conducted exclusively by Mrs. Scott upon the one side and Almira Wells upon the other, although others were present at conversations between them respecting the subject-matter of the agreement, and also at the time the note was signed.

The will of Ruth M. Wells was read in evidence over the objection of the appellant. Her estate was sought to be charged with the payment of the note, upon the theory that she was the devisee of Almira Wells, and her will disposing of

the property devised to her by the deceased sister was evidence of her acceptance of the devise. This fact might have been taken as true upon the proposition that the law will presume the acceptance of a beneficial provision, in the absence of evidence showing a contrary intention, but the admission of evidence, also, of such acceptance can not be regarded as reversible error.

Upon the trial appellant introduced Mrs. Scott as a witness, and examined her quite fully respecting the transaction involved in the suit, in all its phases.

Her testimony was adverse to the interest of appellant, and the latter afterwards called other witnesses and proffered testimony impeaching the credit of Mrs. Scott by·proof of bad character, which was rejected by the court. This is relied upon as error. Section 507, R. S. 1881, provides that "The party producing a witness shall not be allowed to impeach his credit by evidence of bad character, unless it was indispensable that the party should produce him, or in case of manifest surprise, when the party shall have this right." This is but the enactment of the common law rule as it is recognized and applied in most of the States of this country and in England. The right of impeachment is not claimed in this case upon the ground of surprise, as Mrs. Scott is the mother and next friend of appellee and verified the statement of the claim, so appellant had no reason to expect favorable testimony from her, but it is insisted that she was an indispensable witness.

Several witnesses had already testified to conversations with the maker of the note, in which she admitted her agreement to make substantial provision for the education of appellee in consideration of her name, and others, that they were present and saw her sign the note and deliver it to Mrs. Scott for appellee's use and benefit. The rule is quite general that where one is required to produce a particular witness to satisfy the demands of the law, as the subscribing witness to a will he is not bound by the testimony of such

witness, but may impeach his credit by evidence of bad character. *Thornton* v. *Thornton*, 39 Vt. 122; *Harden* v. *Hays*, 9 Pa. St. 151; *Dennett* v. *Dow*, 17 Me. 19; *Olinde* v. *Saizan*, 10 La. Ann. 153; *Williams* v. *Walker*, 2 Rich. (S. C.) Eq. 291; 1 Greenleaf Ev., section 443.

Appellant was under no legal obligation to use Mrs. Scott as a witness, and if the exigencies of her case were such as to make it seem expedient to do so, she will not be permitted to dispose of the prejudicial evidence by attacking the character of the witness. Appellant was in quest of evidence to prove the note was a forgery, and she had no. reason to expect such testimony from Mrs. Scott, who had all along been insisting upon its genuineness. The rules of practice will not permit a party to call a witness closely ·connected with the adversary's cause, and from whom he has no reason to expect favorable testimony, then to assail the character of the witness by impeachment. By this means the adversary's cause might often be unfairly prejudiced, and justice be thwarted. The case of *Becker* v. *Koch*, 104 N. Y. 394, is cited in support of the right to the rejected evidence, but it only requires a superficial examination of that case to discover that it does not lend any support to such right. On the other hand, it is in full accord with the current of authorities upon the proposition that an indispensable witness is one a party is compelled to produce to satisfy the requirements of the law. There was no error in excluding the evidence.

In her testimony Mrs. Scott stated that she was present when the note was signed, and that two other persons were there besides herself and Almira Wells. She was asked by counsel for appellant if she had not been engaged as housekeeper for one Dr. Blades, which she admitted, and she was then asked if she did not state to Dr. Blades during that time that no one was present when the note was signed except herself and Almira Wells. This question she answered in the negative. Then counsel propounded the following questions: "Did you not state it to Mrs. Long?" "Did

you not state it to Mr. Bittenger?" Both of which were answered in the negative. After Mrs. Scott was dismissed from the witness stand Bittenger was called by appellant and asked if Mrs. Scott did not state to him at a given time· and place that no one was present when the note was signed except herself and Miss Wells. Objections were sustained to the question upon the ground, amongst others, that no foundation had been laid for it. The only purpose of evidence which the question could have elicited was to impeach Mrs. Scott by proving a contradictory statement out of court. A party has the right to impeach his own witness, who has testified against him, by proof of contradictory statements, under the last clause of section 507, *supra.* *Hull* v. *State,* *ex rel.,* 93 Ind. 128 ; *Conway* v. *State,* 118 Ind. 482.

But it is always necessary to lay the foundation for impeachment by calling the attention of the witness who is sought to be impeached to the time and place of the statement so he may have the opportunity of admitting or denying it intelligently. That was not done in this instance, and consequently the court committed no error in sustaining the objection to the question asked Bittenger if in other respects the evidence was competent. In their offer to prove counsel included the names of Dr. Blades and several others, by whom they asserted such proof could be made, but did not call any of them to the stand. No question can be raised in this manner. *Ralston* v. *Moore,* 105 Ind. 243.

Over a year elapsed from the first conversation upon the subject-matter of the controversy until the note was given, and appellant offered evidence tending to prove that during this *interim* Almira Wells entertained a dislike for Mrs. Scott, and regarded her as a woman of bad character. The evidence thus offered bore upon the disposition of Miss Wells towards Mrs. Scott in the abstract, and did not purport to consist of expressions or acts of hostility between them nor of declarations in connection with any act upon the part of Miss Wells. The evidence was excluded.

It is insisted with much earnestness and plausibility that the proffered evidence was competent as part of the *res gestæ*, upon the theory that it manifested a persuasion of the mind inconsistent with a disposition essential to create a contract. While the concurrence of the minds of the parties is the essence of every contract, yet, pending the negotiations, the declarations of one of the parties unconnected with any act forming part of the transaction, but which tend only to exhibit the disposition of the mind of the declarant towards it will not be received to establish or overthrow the contract. Such declarations are not part of the *res gestæ.* Declarations instinctively emanating from an act, which is the subject of litigation, may be received in evidence as part of the *res gestæ*, where they tend to elucidate or give character to the litigated act.

In transactions covering a considerable period of time such declarations in connection with any act which forms a substantive part of the transaction are admissible under this rule. But evidence simply exhibiting the subjective condition of the mind in relation to the transaction will not be allowed. No declaration is admissible as part of the *res gestæ*, if made in the absence of the opposite party, unless connected with or related to some part of the transaction. 1 Wharton Ev., section 266, *et seq.*

Before the note could be read in evidence it was incumbent upon appellee to prove its execution *prima facie*, at least, and for this purpose several witnesses were introduced, among whom was one George W. Jones. He testified that Mrs. Scott came to his office on the day the note was dated, and procured him to fill in the blank spaces by inserting the date, the names of payees and amount. She told him the note was to be signed by Almira Wells, at whose request she was having it written. After he had filled out the note Mrs. Scott took it away with her. Jones did not see the note signed, and was not acquainted with Almira Wells' signature. The bill of exceptions recites that this evidence

was addressed exclusively to the court, but it does not appear whether it was given in the presence of the jury or not. After sufficient evidence had been heard by the court to warrant the reading of the note to the jury, it was so read, and appellee rested her case. Several witnesses were then introduced upon the other side who claimed to be familiar with the handwriting of Almira Wells, and who testified that in their opinion she did not sign the note. One Tolman was called as an expert, and testified that he had analyzed and examined the ink with which the note was written, and found it to be of a peculiar quality, and that the writing in the body of the note was with the same kind of ink as the signature. He also testified to having made microscopic enlargements of the signature and portions of the writing in the body of the note for the purpose of comparing them, and he gave it as his opinion that the name was signed to the note by the person who filled the blank spaces in the body. Upon the rebuttal, appellee recalled Jones, who testified to the *jury* substantially as he had testified to the court upon the question of the execution of the note. He declared that he filled out the note but did not write the signature. The court permitted the appellee, over appellant's objection, to introduce evidence of the good character of Jones in support of his credibility. There was no attempt to impeach him by evidence introduced for that purpose, but the supporting evidence was justified upon the ground that the testimony of Tolman imputed to Jones the crime of forgery, and thus indirectly impeached his standing as a witness. Tolman's testimony bore directly upon the principal issue of fact before the jury, and the disparagement of the credibility of Jones resulted from a contradiction between them upon that issue, and was entirely incidental. The question for decision, then, is, can a witness who is contradicted by other evidence upon a direct issue in the case be supported by proof of good character when the contradiction imputes moral turpitude or the commission of a crime? It is a uni-

versal rule that evidence of the good character of a witness is not allowable unless his character has been put in issue in some manner. The discovery of the truth is the aim of every judicial investigation, and the rules of evidence are designed to subserve that end. They can not be employed to vindicate the character of a witness except so far as may be required to satisfy the demands of the investigation in hand. Every witness is presumed by the law to have a good character, and evidence to support it is not permitted except in instances where it has been attacked. The credibility of a witness may be impeached by evidence of bad character in general; by proof of contradictory statements upon a material issue, and by proof of conviction of an infamous crime, and upon cross-examination his relations to the parties, interest in the suit and other matters may be inquired into as affecting his standing as a witness. It is a universal rule that when the general character of a witness has been assailed he may be supported by evidence of good character, but in some of the jurisdictions in this country a witness can not be sustained by evidence of good character when his credibility has been impeached by any of the other methods. The better and more general rule is, however, that proof of character may be made in support of a witness who has been impeached by any of the methods known to the law. *Rex* v. *Clarke*, 2 Stark. R. 214; *People* v. *Rector*, 19 Wend. 569; *Webb* v. *State*, 29 Ohio St. 351; *People* v. *Ahfat*, 48 Cal. 61; *Prentiss* v. *Roberts*, 49 Maine, 127; *Isler* v. *Dewey*, 71 N. C. 14; *Lewis* v. *State*, 35 Ala. 380; *Davis* v. *State*, 38 Md. 15; *Paine* v. *Tilden*, 20 Vt. 554. Such, also, is the rule in this State. *Harris* v. *State*, 30 Ind. 131; *Clem* v. *State*, 33 Ind. 418.

But all of these cases are grounded in the principle that supporting evidence is admissible only when character has been put in question by a direct impeachment of the witness. Where there is a mere contradiction upon an issue in the case, evidence of good character will not be heard. *Pruitt* v.

*Cox*, 21 Ind. 15; *Gebhart* v. *Burkett*, 57 Ind. 378; *Presser* v. *State*, 77 Ind. 274; *Fitzgerald* v. *Goff*, 99 Ind. 28; *Rogers* v. *Moore*, 10 Conn. 13; *Heywood* v. *Reed*, 4 Gray, 574; *Fahey* v. *Crotty*, 63 Mich. 383; *Boardman* v. *Woodman*, 47 N. H. 120; *State* v. *Archer*, 73 Iowa, 320; *Norris* v. *Stewart's Heirs*, 105 N. C. 455.

And this is true, though the contradiction is of such a character as to consequentially impute fraud, immorality or crime. Character is not in issue in contemplation of the law, so as to admit supporting evidence unless the witness is impeached *directly* by some method recognized by the rules of evidence. A contrary doctrine was declared in the cases of *George* v. *Pilcher*, 28 Gratt. 299, and *Tedens* v. *Schumers*, 14 Ill. App. 607, but these cases are in conflict with the great body of the authorities, and can not be sustained upon principle. They seem to recognize a right in the witness to a personal vindication independent of the rights of the litigants, but this is a palpable perversion of the power of courts. In the case of *Merriam* v. *Hartford, etc., R. R. Co.*, 20 Conn. 354, an exception was made in favor of a witness who was a stranger to the court and jury, allowing such witness to be supported by evidence of good character when he *was* simply contradicted by other evidence, but this case is without support in precedent, and the rule announced is obviously impracticable. The case of *Fisher* v. *Hamilton*, 49 Ind. 341, lends no support to appellee's position. In that case the only question decided by the court was that a *party* who testifies is entitled to the same rights and subject to the same rules as any other witness. No opinion was intimated upon the question raised in the present case.

But it is insisted if the court erred in admitting the evidence the error was harmless, and should not result in a reversal of the judgment. A witness whose credibility has not been assailed, but who is supported by evidence of good character, is very apt to be credited by the jury with a standing above that given to other witnesses who are not so

supported. Such evidence is not without the capacity to inflict harm, and its erroneous admission has been regarded by the Supreme Court as reversible error. *Johnson* v. *State*, 21 Ind. 329; *Brann* v. *Campbell*, 86 Ind. 516.

For this error the judgment must be reversed.

The remaining question relates to the refusal of instructions requested by appellant. The note was payable in the alternative, either to "Julia A. Scott or Almira Scott, her child." The consideration moved from Mrs. Scott, and she conducted the negotiations with the maker, exclusively. It was delivered to her " to be taken care of" for appellee, and was to be applied in educating the latter.

Counsel for appellant very ingeniously argue that the legal title to the note was in Mrs. Scott, either for herself or as trustee for appellee, and, in either event, they contend, action upon it was barred by the settlement of the estate of Almira Wells. The instructions tendered would have presented these views of the law to the jury. Section 2310, R. S. 1881, as amended in 1883 (Elliott's Supp. section 385), declares that all claims which shall not be filed against the estate of a decedent at least thirty days before final settlement shall be barred. Section 2442 provides that the heirs, devisees or distributees of a decedent shall be liable after final settlement, to the extent of the property received by them, to any creditor who was insane, an infant or out of the State six months prior to the settlement. It may be conceded that as a general rule the statute of limitations runs against the trustee of an express trust, and when he is barred the *cestui que trust* is barred also. *Wych* v. *East India Co.*, 3 P. Wms. 309; *Wilmerding* v. *Russ*, 33 Conn. 67; *Williams* v. *Otey*, 8 Hump. 563; *Coleman* v. *Walker*, 3 Metc. (Ky.) 65; *Hall* v. *Bumstead*, 20 Pick. 2; *Marsh* v. *Dooley*, 52 Cal. 232; *Grimsby* v. *Hudnell*, 76 Ga. 378; *Collins* v. *McCarthy*, 68 Tex. 150; *Chase* v. *Cartright*, 53 Ark. 358.

In such cases the right of action at law is exclusively in

the trustee, and he responsible to the *cestui que trust* for any loss of the estate occasioned by his negligence.

But the practice act in this State adopts the equity rules, under which all actions, with few exceptions, shall be brought in the name of the real party in interest. The exceptions are contained in section 252, R. S. 1881, which provides that an executor, administrator, trustee of an express trust or a person expressly authorized by statute may sue without joining the person for whose benefit the action is prosecuted. This section defines a trustee of an express trust to be " a person with whom or in whose name a contract is made for the benefit of another." To create a trust under this statute the contract must be made in the name of the trustee, thereby vesting the legal right in him for the benefit of the *cestui que trust*. The mere conducting of a treaty by one person which results in a contract for the benefit of another does not create the relation of trustee and *cestui que trust,* unless the contract is made in the name of him who negotiates it. Nor will the mere delivery of property to one person for the benefit of another create that relation, within the meaning of the statute under consideration. The legal title to the note in question was never in Mrs. Scott exclusively. She had no beneficial interest in it, nor was it made in her name for the benefit of appellee. She was but an alternative payee, and the legal title to the note was no more in her than in appellee who was the equitable owner of it. Under the code of this State, in view of the facts disclosed by the evidence, the right of action upon the note was always in appellee as the real party in interest. If the note had been payable to Mrs. Scott for the benefit of appellee, the title would have been in the former, and her right to maintain suit upon the note would have been complete. *Heavenridge* v. *Mondy,* 34 Ind. 28. But it was not so written.

Furthermore, in an action upon an instrument payable to two or more persons in the alternative, it is necessary under

the common law practice for all of the payees to unite as plaintiffs. *Walrad* v. *Petrie*, 4 Wend. 578; *Osgood* v. *Pearsons*, 4 Gray, 455; *Willoughby* v. *Willoughby*, 5 N. H. 244; *Westgate* v. *Healy*, 4 R. I. 523, *Quinby* v. *Merritt*, 11 Hump. 440; *Musselman* v. *Oakes*, 19 Ill. 81; *Parker* v. *Carson*, 64 N. C. 563; *Blanckenhagen* v. *Blundell*, 2 B. and Ald. 417.

Section 267, R. S. 1881, seems to contemplate that where several persons have a right of action, and some of them are barred by the statute, such bar shall not affect the right of the others. In any view it must be held that appellee, on account of her infancy, was not prejudiced by the settlement of the estate of Almira Wells. The instructions refused were not applicable to the evidence.

Some importance in the argument of counsel is attached to the averment in the statement of the claim that the note was "executed and delivered" to Mrs. Scott, but that can not be regarded as of vital consequence.

It is not necessary to specifically plead the title of the assignee in an action upon a promissory note, further than to allege its endorsement by the payee, and as the title to the note in this case was not in issue under the pleadings or evidence, the averment of the character in which Mrs. Scott received the note may be treated as surplusage.

The judgment is reversed for the error pointed out, with instructions to the court below to grant a new trial.

Filed Oct. 13, 1892.