Terry E. SLAYTON, Appellant,

v.

STATE of Indiana, Appellee.

No. 1283S436.

Supreme Court of Indiana.

Aug. 21, 1985.

Donald C. Swanson, Jr., Fort Wayne, for appellant.

Linley E. Pearson, Atty. Gen., Cheryl L. Greiner, Deputy Atty. Gen., Indianapolis, for appellee.

DeBRULER, Justice.

Appellant, Terry Slayton, was convicted by a jury of burglary, a class B felony, Ind.Code § 35–43–2–1 (Burns 1985 Repl.), and was sentenced to a term of imprisonment of twenty years. He raises two issues in this direct appeal:

1. Whether the evidence was sufficient to sustain his conviction; and,

2. Whether the trial court erred in allowing the State to introduce evidence of a prior inconsistent statement by its own witness.

### I.

The facts which tend to support the verdict are as follows: the burglary victim had left his house locked and orderly. While away, he received a notice from his security company that his house was being burglarized. When he arrived home, he saw that a door had been forcibly opened, and some jewelry and a jar of coins were strewn about the yard. An employment recognition pin was missing. The police had arrived and appellant was in their custody.

Officer Chrzan testified that when he arrived on the scene he walked around to the east side of the victim's residence and saw appellant exiting. Appellant was wearing blue jeans, tennis shoes, a dark vest over a lighter, long sleeved shirt, and

a hat. Officer Chrzan testified that it was dark, but that he and appellant made eye contact for a "split second."

Appellant dropped a jar of coins he was carrying which was shown to belong to the victim. Appellant fled and a chase ensued. Officer Chrzan was running behind appellant by approximately thirty yards when appellant ducked between two houses and the officer heard a door slam. He walked around to the front of one of the houses and saw appellant peek out the door. The officer entered the house where appellant, extremely out of breath, was arrested.

Officer Chrzan testified he was certain the appellant was the same man he saw leaving the burglarized residence and whom he pursued. He also testified that during the chase he saw a second suspect fleeing the scene.

Officer Stoner testified that he saw his partner, Chrzan, chasing a man with light sleeves and possibly a hat. After a chase, he helped Chrzan subdue appellant from whom he took a screwdriver. Stoner stated the appellant's clothes looked to be the same clothes he saw on the suspect when the pursuit started.

Appellant argues the evidence is insufficient to prove he was the perpetrator of the crime. Specifically, he challenges Chrzan's identification of him as the man who fled the burglarized house. And, he claims he was not shown to have committed the actual "breaking," which he concedes occurred.

We will neither reweigh the evidence nor judge the credibility of witnesses. We look to the evidence most favorable to the State and to all reasonable inferences to be drawn therefrom. We will affirm if the conviction is supported by substantial evidence of probative value which would permit a reasonable trier of fact to find the existence of each element beyond a reasonable doubt. *Smith v. State* (1985), Ind., 474 N.E.2d 71.

Officer Chrzan expressed certainty that appellant was the man who fled the victim's house carrying stolen property and whom he chased until the suspect left the alley and entered the house. He made eye contact with appellant and noted carefully his clothing. When arrested in the house, appellant was out of breath and was still dressed in his winter vest although he claimed he had been in the house all evening.

▪ The State was not required to prove by direct evidence that appellant did the actual breaking. The reasonable inference to be drawn from the evidence that the house was forcibly entered, that appellant fled and was in possession of stolen property, and that he was carrying a screwdriver, is that he committed burglary beyond a reasonable doubt, whether he or accomplice actually "broke" into the house.

## II

State's witness, Lorrina Wright, was subpoenaed and took the stand. She testified under direct examination by the trial prosecutor that on the evening of the burglary she was walking down the street near the victim's house when an acquaintance, Terry Green, approached and "forced" her to take a jewelry box he was carrying.

She went on to testify in a manner contrary to the interests of the State that she did not remember seeing appellant near the burglary, although she had passed him and Green on the street earlier that day. She said she was acquainted with but not related to appellant, and she admitted she had collected his personal effects from the jail the night of the burglary. Wright stated that after the burglary she was given *Miranda* warnings and was interviewed by Officer Stoner.

Because Wright testified she did not remember seeing appellant near the burglary, the prosecutor asked, "Do you remember on December 20th, the night that you talked to Detective Stoner, telling him that [appellant] ....?" His question was interrupted by counsel's objection. Then Wright stated she was telling all she knew, and that she told Stoner the same story the night of the burglary that she was now telling the jury.

Officer Stoner was called again. He testified that he interviewed Wright the night of the burglary. She had told him appellant was her half-brother, and that she was with him and Terry Green that night. She told Stoner that appellant and Green left her to "check out" something in the neighborhood. Thirty-five minutes later she walked to the area and saw appellant and Green enter the victim's house. Next, she saw the men run from the house and appellant handed her the jewelry box.

 Appellant argues that the State should not have been permitted to impeach its own witness because, he claims, Wright was not "declared" hostile and because the State did not lay the proper foundation for introducing the prior inconsistent statement. The legal limitation upon the examination of a witness by the party proponent of that witness finds its basis in statute. I.C. § 34-1-14-15 provides:

> The party producing a witness shall not be allowed to impeach his credit by evidence of bad character, unless it was dispensable that the party should produce him, or in case of manifest surprise, when the party shall have this right; but he may, in all cases, contradict him by other evidence, and by showing that he has made statements different from his present testimony.

Speaking of this statute in *Conway v. State* (1888), 118 Ind. 482, 21 N.E. 285, this court said:

> The purpose of our statute is to prevent a party from being concluded by the testimony of an adverse witness. Like the act of Parliament of Great Britain, our statute has altered a rule of evidence—a rule, it may be said, in passing, which never received the sanction of philosophical writers—in order to enable the courts to better accomplish the purpose for which they are organized, that of discovering truth and administering justice. The wisdom of the statutory rule is illustrated by this case. The prosecutor called a witness who was present when the fatal wound was inflicted, and who had stated to others that it was the accused who gave the wound; but, on the stand, he testified that it was inflicted by another. To hold the State concluded by the statement of the witness made on the stand would check progress toward the discovery of the truth, and make way for a guilty man to escape, where, if the truth were exhibited, it would condemn him. But we need not attempt to vindicate the wisdom of the statute, for we should be compelled to accept the law as it is written, even if we could not approve its policy.

This statute under the last clause, grants the right to a party to impeach his own witness, who has testified against him, by proof of contradictory statements. This grant creates an exception to the general common law rule against such impeachment. According to the case of *Diffenderfer, Executrix v. Scott, N.F.*, (1892), 5 Ind. App. 243, 32 N.E. 87, that general rule has the following basis:

> The rules of practice will not permit a party to call a witness closely connected with the adversary's cause, and from whom he has not reason to expect favorable testimony, then to assail the character of the witness by impeachment. By this means the adversary's cause might often be unfairly prejudiced, and justice be thwarted.

The statutory right to diverge from the general prohibitory rule may be claimed, when the witness betrays his hostility during examination and his friendliness to the opponent, *and* then has his attention directed to the time and place of the contradictory statement so that he may have the opportunity of admitting or denying it intelligently. *Conway v. State, supra; Diffenderfer v. Scott, supra.* There is no authority to support appellant's assertion that one's witness must be "declared" hostile before commencing the impeachment process, although the trial court may well make such a declaration for the record. See *Harden v. State* (1982), Ind., 441 N.E.2d 215, cert. denied 459 U.S. 1149, 103 S.Ct. 794, 74 L.Ed.2d 998.

**1304**

The requisite *showing* of Wright's hostility as a State's witness was apparent when her testimony was exculpatory of appellant and she stated that her prior statement was not inconsistent. *Ward v. State* (1982), Ind., 438 N.E.2d 966; *King v. State* (1973), 260 Ind. 422, 296 N.E.2d 113 reh. denied July 5, 1973. As foundation for introducing the prior inconsistent statement, the State called to the attention of witness Wright the date of the prior statement and to whom it was made. The prosecutor did not fully relate the substance of the statement, but his foundation clearly concerned a statement about appellant and the burglary. Wright then denied that such prior statement was inconsistent with her exculpatory courtroom testimony. The record reveals that the foundation laid called to Wright's attention the alleged statement sufficiently to enable her to recall it and admit, explain, or deny. *Smith v. State* (1981), 275 Ind. 45, 414 N.E.2d 299.

The conviction is affirmed.

GIVAN, C.J., and PRENTICE and PIVARNIK, JJ., concur.

HUNTER, J., not participating.