Larry ANDERSON and Joe Anderson, Appellants–Plaintiffs,

v.

Gary L. SCOTT and Hall–Rodecap, Inc., Appellees–Defendants.

No. 41A05–9209–CV–322.

Court of Appeals of Indiana, Fifth District.

March 14, 1994.

Transfer Denied Aug. 24, 1994.

Lance Wittry, Bennett & Sheff, Indianapolis, for appellants-plaintiffs.

Stephen J. Peters, Michael K. Irwin, William N. Ivers, Stewart & Irwin, Indianapolis, for appellees-defendants.

SHARPNACK, Chief Judge.

Larry and Joe Anderson appeal from the trial court's judgment in their action for damages against Gary L. Scott and Hall–Rodecap, Inc., Scott's employer at the time of the car accident giving rise to this litigation (collectively "Scott"). The Andersons raise the following restated issue: Did the trial court commit reversible error in allowing Scott to impeach two of Scott's own witnesses with evidence of their prior inconsistent statements? We affirm.

In September, 1987, an automobile accident occurred at the intersection of 30th Street and Capitol Avenue in Indianapolis, Indiana. Just prior to the accident, Larry Anderson was driving west on 30th Street; his brother, Joe Anderson, was a passenger in the vehicle. Scott was traveling south on Capitol Avenue. A collision occurred between Anderson's vehicle and Scott's vehicle.

The Andersons brought suit against Scott seeking money damages and alleging that Scott had entered the intersection against a red light. A jury trial was conducted January 21–24, 1992, during which the Andersons and Scott each claimed that they had the green light when entering the intersection. On January 25, 1992, the jury returned its verdict allocating 50% fault to Larry Anderson and 50% fault to Scott. The jury found Larry Anderson's total damages to be $10,000.00 and Joe Anderson's total damages to be $1,000, resulting in a net award to Larry and Joe Anderson of $5,000.00 and $500 respectively. Following the denial of their motion to correct error, the Andersons initiated this appeal.

The Andersons contend that the trial court committed reversible error by allowing Scott to impeach two of Scott's own witnesses, Shannon Harris and Donald Holland. Harris and Holland were the only two eye-witnesses to the accident identified in the police accident report, and neither witness was called by the Andersons to testify.

We first address the Andersons' contention that the trial court erred in allowing the impeachment of defense witness Shannon Harris. On direct examination by defense counsel, Harris testified that she did not witness the car accident and that she did not see the color of the traffic light at the time of the accident. The following colloquy then transpired:

"Q. On the day of the accident ... did you talk to an Indianapolis Police Officer about seeing the impact?

A. No I didn't. I spoke to an officer but it wasn't regarding the accident.

Q. Isn't it true that on that date you told an Officer with the Indianapolis Police Department that a Pinto automobile [the

Andersons' vehicle had entered the intersection on westbound 30th Street against a red light?

[PLAINTIFFS' COUNSEL # 1]: Objection your—

A. No I didn't.

[PLAINTIFFS' COUNSEL # 1]: — leading.

[PLAINTIFFS' COUNSEL # 2]: Your Honor, objection, and it's a question designed to impeach their own witness.

COURT: Okay. Both objections are you making or just the one?

[PLAINTIFFS' COUNSEL # 1]: We are making—

[PLAINTIFFS' COUNSEL # 2]: Making both objections your Honor.

COURT: Okay. As to the impeachment I am going to overrule that objection. As to the leading I am going to overrule that objection.

Q. Ma'am would you please repeat your response to that question?

A. No I did not tell the officer I seen the light.

Q. Ma'am do you recall having a conversation with T.J. Alisbaugh on June 3, 1991 in which you said that you had been approached by two men who were involved in the accident and that they had asked you to change your testimony about seeing the automobile, the Pinto automobile entering the intersection against a red light?

A. No I did not tell her that.

Q. Do you recall having a conversation with T.J. Alisbaugh—

[PLAINTIFFS' COUNSEL # 1]: [Renews objection based on leading the witness and on defense impeaching a defense witness]

COURT: [Overrules Plaintiffs' objections and notes Plaintiffs' objections as continuing objections]

\*   \*   \*   \*   \*   \*

Q. On June 4, 1991, do you recall having a conversation with T.J. Alisbaugh in which you again said that two brothers involved in the accident had approached and offered you a sum of money to say that you had seen the accident and that they had the green light?

A. Okay, as far as your dates on talking to T.J. Alisbaugh, I don't recall those exact dates. I do recall speaking to her, but no, I do not recall making that statement as far as what you just stated."

(Record, pp. 620–24). Scott then called T.J. Alisbaugh, an investigator employed by the defense. Alisbaugh testified that during her first contact with Harris, Harris stated, among other things, that she had been contacted by the two brothers involved in the accident, that she did not want to get involved, and that she had not seen the accident. Alisbaugh testified that during a subsequent conversation, Harris stated that she had been contacted by the two brothers involved in the accident and asked to say that they had the green light prior to the accident, that the two brothers offered her a sum of money for her testimony, and that she did not want to appear to be cooperating with either side of the dispute because she was afraid that she or her two children might be harmed.

Indiana law has recognized a long-standing statutory exception to the common law rule prohibiting the impeachment of one's own witness:

> **"Party producing not to impeach—Exception.**—The party producing a witness shall not be allowed to impeach his credit by evidence of bad character, unless it was indispensable that the party should produce him, or in case of manifest surprise, when the party shall have this right; *but he may, in all cases, contradict him by other evidence, and by showing that he has made statements different from his present testimony."*

Ind.Code § 34–1–14–15 (emphasis added). The Andersons contend that the trial court's ruling allowing the impeachment of Harris through her prior inconsistent statements was erroneous in light of the case law defining the conditions under which the statutory exception may be used. Scott responds that

the trial court did not err in allowing the impeachment of Harris.[1]

As the Andersons note, case law interpreting I.C. § 34-1-14-15 has limited the use of the statutory exception to situations where the witness has testified in a manner which is prejudicial to the proponent of the witness. For example, in the case of *Hull v. State ex rel. Dickey* (1883), 93 Ind. 128, the Indiana Supreme Court wrote:

> "Where a witness does not testify to anything prejudicial to the party calling him, there can be no object in impeaching him, and hence the statute can not apply to such case. Nor can it apply to a case where a witness fails to testify to such facts as he is called to prove. Such testimony, though not beneficial, is not prejudicial, and therefore no reason exists for impeaching the witness."

*Id.* at 133. Similarly, in a recent case discussing the use of I.C. § 34-1-14-15 our supreme court wrote:

> "This statute under the last clause, grants the right to a party to impeach his own witness, who has testified against him, by proof of contradictory statements. This grant creates an exception to the general common law rule against such impeachment. According to the case of *Diffenderfer, Executrix v. Scott, N.F.,* (1892), 5 Ind. App. 243, 32 N.E. 87, that general rule has the following basis:
>
> > The rules of practice will not permit a party to call a witness closely connected with the adversary's cause, and from whom he has not reason to expect favorable testimony, then to assail the character of the witness by impeachment. By this means the adversary's cause might

often be unfairly prejudiced, and justice be thwarted.

> The statutory right to diverge from the general prohibitory rule may be claimed, when the witness betrays his hostility during examination and his friendliness to the opponent, *and* then has his attention directed to the time and place of the contradictory statement so that he may have the opportunity of admitting or denying it."

*Slayton v. State* (1985), Ind., 481 N.E.2d 1300, 1303. The Andersons argue that the trial court erred in allowing Scott to impeach Harris because her testimony was not adverse or prejudicial to the defense. We agree.

As noted by the court in *Slayton,* the statutory right to impeach or contradict one's own witness through the witness' prior inconsistent statements may be claimed when the witness has testified "against" the proponent. *Id.* This exception may be utilized only after "the witness betrays his hostility during examination and his friendliness to the opponent," even though there is no requirement that the witness be "declared" hostile by the trial court. *Id.* In the present case, Harris' testimony, although not helpful to the defense, was not prejudicial. She merely testified that she did not witness the accident or the color of the traffic light. We find nothing in this testimony to indicate hostility to Scott or friendliness to the Andersons.

There is no point to contradicting or impeaching a witness who has not testified adversely to the proponent of the witness. If the testimony of the witness is innocuous, as it was in the present case, it makes no difference whether the trier of fact believes the witness. The only point to introducing the

---

1. Scott also argues that the Andersons waived appellate review of the impeachment of Harris through, *inter alia,* their failure to make timely and specific objections when the testimony was offered at trial. Based on our review of the record, however, we do not agree. Prior to Harris being called to the stand by Scott, the Andersons made an extensive record, outside of the hearing of the jury, of their objections based on the following instruction from the trial court: "[COURT]: I'll tell you what you might do then is go ahead and make your record as to all the reasons now and at the proper time if you want to make your objection then you can just then

ask to incorporate your argument and it'll save some time maybe in front of the jury." Record, p. 600. From our review of the record, we conclude the Andersons preserved appellate review of the trial court's ruling allowing Harris' impeachment.

Additionally, Scott points out that Rule 607 of the Indiana Rules of Evidence, effective January 1, 1994, provides: "The credibility of a witness may be attacked by any party, including the party calling the witness." As this rule was not in effect during the trial preceding this appeal, however, the rule is not dispositive of the issue before us.

prior statement of the witness would be to suggest the truth of the statement favorable to the proponent, *i.e.,* to use the prior statement substantively in the manner previously allowed in *Patterson v. State* (1975), 263 Ind. 55, 324 N.E.2d 482, but later rejected in *Modesitt v. State* (1991), Ind., 578 N.E.2d 649, 652–54. In *Modesitt,* a case decided prior to the trial in the present case, our supreme court overruled *Patterson* and adopted the text of Fed.Rule 801(d)(1)(A) as the rule to be followed in Indiana. Additionally, Indiana recently adopted the Indiana Rules of Evidence, effective January 1, 1994, including Ind. Evidence Rule 801(d)(1)(A). Under *Modesitt* and our new rule, a prior statement will not be deemed hearsay when the "declarant testifies at trial or a hearing, subject to cross examination concerning the statement, and the statement is 'inconsistent with the declarant's testimony, and was given under oath subject to the penalty of perjury at a trial, hearing, or other proceeding, or in a deposition.'" *Modesitt,* 578 N.E.2d at 653 (quoting Fed.Rule 801(d)(1)(A)).[2]

In the present case, because the prior inconsistent statements of Harris were not made under oath as required by *Modesitt,* they were inadmissible as substantive evidence. *Id.* at 653–54. Because the testimony of Harris was not otherwise adverse to Scott, there was no basis upon which to seek to impeach her by her prior inconsistent statements. We agree with the observation in a previous opinion from this court that the statutory exception allowing the impeachment of one's own witness should not be used as an artifice to put inadmissible evidence before the jury. *Pelican, Inc. v. Downey* (1991), Ind.App., 567 N.E.2d 847, 850, *trans. denied.* It was, therefore, error to allow the impeachment and to admit evidence of Harris' prior inconsistent statements.

▪ Notwithstanding our determination that the trial court erred in allowing the

impeachment of Harris, our review of the record leads us to conclude that such error was harmless; therefore, reversal would be inappropriate. The erroneous admission of evidence will not serve as a basis for reversal absent prejudice to the complaining party. *Homehealth, Inc. v. Northern Indiana Public Service Company* (1992), Ind.App., 600 N.E.2d 970, 974, *reh'g denied; Aldridge v. Abram & Hawkins Excavating Co., Inc.* (1985), Ind.App., 474 N.E.2d 107, 109, *reh'g denied, trans. denied.*

We first note that Alisbaugh's testimony *supported* Harris' testimony regarding whether Harris had witnessed the accident. Harris' testimony that she did not see the accident was consistent with the prior statement attributed to her by Alisbaugh. Second, we conclude that the jury was not improperly influenced by the impeachment testimony in light of Harris' testimony as a whole and the actual outcome of the trial. On cross-examination of Harris, the Andersons elicited testimony in direct contradiction of any possible inference regarding bribery of the witness.[3] We find Harris' prior statement that she did not want to get involved in this hotly contested personal injury lawsuit due to concern for herself and her family was ambiguous. Additionally, extrinsic evidence of this statement was admitted only after the trial court admitted Harris' own testimony on cross-examination and redirect examination that she did not want to be involved in the lawsuit, that she did not witness the accident and did not think that she should be involved as a witness, and that she was not willing to lie for either side of the dispute. Most importantly, had the jury drawn a conclusion that the Andersons had engaged in bribery or threats with regard to Harris, we find it highly unlikely that the jury would have returned a verdict in favor of the Andersons on the issue of liability and awarded damages to them. In the absence

---

**2.** For clarity, we note that the Indiana Supreme Court's *Modesitt* decision left untouched "the existing, recognized hearsay rule and its exceptions." *Modesitt,* 578 N.E.2d at 654.

**3.** Andersons' counsel cross-examined Harris as follows:

"Q. Ma'am I want you to tell the jury, did my client bribe you?
A. No.
Q. Attempt to bribe you?
A. No.
Q. You understand that you are under oath?
A. Yes."
(Record, p. 630).

of prejudice to the Andersons, we find no grounds for reversal. *Aldridge,* 474 N.E.2d at 109.

██ We next turn to the Andersons' allegation that the trial court erred in allowing Scott to impeach another defense witness, Daniel Holland. On direct examination by Scott, Holland testified that he was traveling behind the Andersons prior to the accident. Holland then expressed unexpected hesitance at trial regarding the color of the traffic light when the Andersons entered the intersection, and the following exchange transpired:

"Q. Sir previously you have been deposed in this lawsuit have you not?

A. Yes.

\* \* \* \* \* \*

Q. I believe in previous deposition testimony you indicated that the light was red when the Pinto [the Andersons' vehicle] entered the intersection?

[PLAINTIFFS' COUNSEL # 1]: Objection your Honor, he is attempting to impeach his own witness.

COURT: It's overruled. Did you finish your question?

A. I believe all I said was the, when I looked at the light it was red.

\* \* \* \* \* \*

Q. Mr. Holland, did you give a statement on May 31, 1991 which [sic] you were asked questions about the color of the light?

A. Probably.

Q. Do you recall stating at that time that the light would have been red when the Pinto entered the intersection?

A. I believe it was, but I don't know for sure. I don't know if it changed.

\* \* \* \* \* \*

Q. Did you see the impact?

A. Yes I did.

Q. What did you do after you saw the impact?

A. Waited for the intersection to clear and then drove past the accident.

Q. Okay when you saw the impact, did you stop at the intersection?

A. Yes, yes.

Q. Why did you stop?

A. Because of the accident and I assumed, I thought the light was red, okay.

\* \* \* \* \* \*

Q. Did you give your name to a police officer on the scene?

A. Yes.

Q. And do you recall having a conversation with a police officer?

A. He just asked me you know what had happened.

Q. And what do you recall telling him about the color of the light?

A. I believe I told him it was red."

(Record, pp. 690–96). On re-direct of this witness, the following exchange occurred:

"Q. In your deposition do you recall being asked this question, page 29—when the car, when the brown car entered the intersection what was the traffic light for the traffic on westbound 30th Street? Answer—it was red. Question—how long had it been red. Answer—you know, I noticed it probably a block. Do you recall giving these responses?

A. Yeah.

Q. This is the first time you've indicated any hesitancy about what the color of the light was?

A. Uh, I'd say the last couple of days I've, this has really been going over and over and over.

Q. But you and I have talked several times in the past and you have always indicated to me it was red for the brown Pinto?

A. I always believed it was. But now, I don't, I am not real sure right now."

(Record, pp. 704–05). Scott argues that the Andersons have waived review of the impeachment issue regarding Holland's testimony. We agree. The Andersons made only one objection based on the impeachment of this witness, set forth above. This single objection failed to state with specificity why defense counsel's questions constituted improper impeachment of the witness and did

not incorporate any prior argument regarding impeachment of a party's own witness. Additionally, the Andersons' other objections during Holland's testimony were all based on different grounds than those urged on appeal. The Andersons have failed, therefore, to preserve this issue for our review. *See St. Anthony Medical Center v. Smith* (1992), Ind.App., 592 N.E.2d 732, 737 ("[G]eneral objections, such as 'irrelevant,' without more, fail to preserve an issue for appellate review."), *trans. denied; Clouse v. Fielder* (1982), Ind.App., 431 N.E.2d 148, 154 (on appeal, the grounds for objection to the admission of evidence must be the same grounds as asserted in the trial court).

We note also that even if the Andersons had preserved review of this issue and we were to find error in the trial court's ruling, we would find no grounds for reversal. Testimony which was cumulative of that evidence about which the Andersons complain was admitted without objection. *See Annon II, Inc. v. Rill* (1992), Ind.App., 597 N.E.2d 320, 325 ("Any error in the admission of evidence is harmless if the same or similar evidence is admitted without objection."), *reh'g denied, trans. dismissed; Matter of Estate of Palamara* (1987), Ind.App., 513 N.E.2d 1223, 1231–32 (erroneous admission of evidence is harmless if same or similar evidence is admitted without objection). We find no basis for a reversal arising from Holland's testimony.

Next, the Andersons argue that the testimony of the investigating officer, Michael Snow, was improperly admitted. The Andersons contend that the admission of Snow's testimony, based in pertinent part on the contents of his police report, constituted improper impeachment of both Harris and Holland. Scott counters that because the Andersons are making this argument for the first time on appeal, they have waived appellate review. We agree.

The Andersons did not make a single objection based on improper impeachment of

Harris and Holland at any point during Snow's testimony. All of the Andersons' objections during the pertinent portions of Snow's testimony were based on hearsay.[4] It is the settled law of this state that a party may not urge different grounds for objection on appeal than those grounds asserted in the trial court, and that failure to adhere to this rule waives review of the issue on appeal. *Clouse*, 431 N.E.2d at 154. Consequently, the Andersons have waived review of this issue.

Finally, the Andersons argue that if the trial court had not admitted the evidence at issue in this appeal, the jury might have awarded higher damages to them. In light of the fact that none of the evidence of which the Andersons complain touches upon the issue of damages, such a position is merely speculation and is far too tenuous a basis on which to predicate a reversal.

For all of the foregoing reasons, we affirm the trial court.[5]

**AFFIRMED**

NAJAM and RUCKER, JJ., concur.

---

4. Although during argument on one of the Andersons' hearsay objections, the Andersons noted for the record that Scott had called Harris, there was no mention of Holland, and hearsay remained the basis for the objection.

5. Scott's "Verified Petition for Leave to Amend Appellees' Brief by Interlineation" is hereby granted.