(No. 52566.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee,
v. MICHAEL KRUEGER, Appellant.

*Opinion filed October 17, 1980.*

Mary Robinson, Deputy Defender, of the Office of the State Appellate Defender, of Elgin (Patrick M. Carmody, law student, of counsel), for appellant.

William J. Scott, Attorney General, of Springfield (Donald B. Mackay, Melbourne A. Noel, Jr., and Mark L. Rotert, Assistant Attorneys General, of counsel), for the People.

MR. JUSTICE MORAN delivered the opinion of the court:

Following a jury trial in the circuit court of Winnebago County, defendant, Michael Krueger, was convicted of murder and sentenced to 20 to 50 years in the penitentiary. The appellate court affirmed (74 Ill. App. 3d 881), and we granted defendant leave to appeal.

Defendant contends that the police violated his *Miranda* rights by continuing to interrogate him after he requested counsel.

Prior to his trial for the murder of James Finnegan, defendant moved to suppress certain inculpatory statements made to three Rockford police officers soon after his arrest. A hearing was held on defendant's motion, during which it was revealed that defendant was arrested on the evening of November 4, 1976, pursuant to a sworn statement which defendant's girlfriend, Sharon Sularz, had given to the Rockford police. Her statement recited the details surrounding an incident in which defendant caused Finnegan's death by stabbing him several times with a knife while the two were struggling in a car during the early morning hours of August 28, 1976. Prior to

being questioned by Detective Donnelli, Detective Otwell and Sergeant Galvanoni, defendant was given the full *Miranda* warnings. Defendant stated that he understood his rights and, at 8:20 p.m., signed a written waiver-of-rights form.

Defendant first answered questions about several burglaries, unrelated to the stabbing incident, and stated that he had been involved in nothing else. After being questioned about the stabbing, however, defendant signed a statement implicating himself in Finnegan's death. All three officers testified that defendant made no request relating to his *Miranda* rights during this time period. On cross-examination, however, each officer testified that defendant did make a response when they started to question him about the stabbing. According to Detective Donnelli, defendant said, "Wait a minute. Maybe I ought to have an attorney. You guys are trying to pin a murder rap on me, give me 20 to 40 years." Detective Otwell testified that defendant raised partially up out of his chair and said, "Hey, you're trying to pin a murder on me. Maybe I need a lawyer." Lastly, according to Sergeant Galvanoni, defendant said, "Just a minute. That's a 20 to 40 years sentence. Maybe I ought to talk to an attorney. You're trying to pin a murder rap on me." Detective Otwell replied to defendant that the news media, not the police, had said it was murder; that only two people knew what had happened and one of them was dead. When defendant asked the officers how they knew the stabbing was not done in self-defense, the officers said they did not know and that was why they wanted to talk to him about it. Shortly thereafter, defendant gave a written statement admitting that he had stabbed Finnegan and describing the circumstances surrounding the incident.

According to defendant's testimony, at the time the officers asked him about the stabbing incident, he indicated to them that he thought he should have an attorney.

On cross-examination, he admitted that the officers' account of the conversation was accurate. The cross-examination continued as follows.

"Q. Why did you continue talking to them after you say you said, 'I think I should have an attorney'?

A. Have you ever been interrogated by three Rockford Police Detectives?

Q. No, I haven't, but I want to know why you continued talking to them.

A. Because I believed it was self-defense. I still do. They wanted a statement of what happened to clear it up. I wanted to get it off my chest, so I gave them a statement.

Q. But you know you had a right to have an attorney there if you wanted one, didn't you?

A. Yes, I did.

Q. You ever insist on having an attorney contacted?

A. I asked for an attorney before I began the statement, and I saw that it was not going to get me anywhere, so I just ceased on that line, because I just knew I wasn't going to get an attorney anyways.

Q. Did it occur to you not to talk any further?

A. Yes, but it occurred to me I might be up all night and be badgered by these three detectives."

At approximately 9 a.m. the next morning, the same three officers sought to question defendant further about the incident. Defendant was asked if he still understood his rights. He replied that he did and that he would talk to the officers. Defendant then told the officers more about the incident.

The circuit court denied defendant's motion to suppress the written and oral statements, finding that the statements were made voluntarily, that defendant understood his rights, and that his rights were not violated. In the appellate court, the defendant argued, in part, that his statements were obtained through interrogation which was continued after he had requested counsel. The appellate court, in affirming the conviction, held that defendant's mention of an attorney did not constitute a request for counsel under *Miranda*.

The combined arguments of the parties in this court ask us to decide, first, whether defendant invoked his fifth amendment right to counsel, and, second, assuming defendant did invoke such right, (a) whether his written statement was the result of continued "interrogation," (b) whether he thereafter waived his right to counsel, either before his written statement or before his oral statement the following morning, and (c) whether the admission of the statements into evidence was harmless error.

The right to counsel involved here is an adjunct of the fifth amendment privilege against self-incrimination. This right must be made known to a suspect prior to custodial interrogation as part of the warnings which the United States Supreme Court adopted in *Miranda v. Arizona* (1966), 384 U.S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602. The *Miranda* warnings are prophylactic safeguards designed to guard against infringement of the privilege against self-incrimination. Statements made by a suspect as a result of in-custody interrogation are not admissible to establish his guilt unless the court finds that the suspect waived his *Miranda* rights prior to making the statements.

The facts that a suspect's statements were voluntary, that he made them with a full understanding of his *Miranda* rights, and that he initially made a voluntary, knowing and intelligent waiver of his rights, are not always sufficient. Despite these conditions, if a suspect "indicates in any manner and at any stage of the process that he wishes to consult with an attorney before speaking there can be no questioning." (*Miranda v. Arizona* (1966), 384 U.S. 436, 444-45, 16 L. Ed. 2d 694, 707, 86 S. Ct. 1602, 1612.) Thus, even if a suspect initially waived his rights and agreed to talk to authorities, he reserves the right to cut off questioning later by requesting or invoking his right to an attorney.

Defendant's remark was variously described at the

hearing on the motion to suppress as "Maybe I ought to have an attorney," "Maybe I need a lawyer," and "Maybe I ought to talk to an attorney." *Miranda's* "in any manner" language directs that an assertion of the right to counsel need not be explicit, unequivocal, or made with unmistakable clarity. We do not believe, however, that the Supreme Court intended by this language that every reference to an attorney, no matter how vague, indecisive or ambiguous, should constitute an invocation of the right to counsel. The record establishes that defendant is a person of normal intelligence, that he fully understood his *Miranda* rights, and that he effectively waived his rights before questioning and agreed to talk with the officers. The interrogation lasted for only a short while. There is no indication that defendant was under any coercion or duress other than that inherent in every custodial setting. Only when the questioning switched from burglaries to the stabbing incident did the defendant exhibit some hesitation, as indicated by the indecisive remarks quoted earlier. According to the evidence, none of the officers considered defendant's comment referring to an attorney to be a request for counsel. Although the officers' subjective beliefs that defendant's comment was not a request for counsel are not to be given undue emphasis or weight, the officers must be allowed to exercise their judgment in determining whether a suspect has requested counsel. (See *Miranda v. Arizona* (1966), 384 U.S. 436, 486 n.55, 16 L. Ed. 2d 694, 730 n.55, 86 S. Ct. 1602, 1634 n.55.) Here, the officers appear to have acted in good faith in not judging defendant's remarks to be an indication that he desired an attorney. Their apparently genuine belief that defendant did not desire counsel helps to distinguish this case from others relied upon by defendant. See *Maglio v. Jago* (6th Cir. 1978), 580 F.2d 202; *State v. Nash* (1979), 119 N.H. 728, 407 A.2d 365; *People v. Superior Court* (1975), 15 Cal. 3d 729, 542 P.2d

1390, 125 Cal. Rptr. 798; *People v. Munoz* (1978), 83 Cal. App. 3d 993, 148 Cal. Rptr. 165.

Under the present facts, we find such belief to have been reasonable. We hold that the officers did not violate defendant's *Miranda* rights, for, in this instance, a more positive indication or manifestation of a desire for an attorney was required than was made here. We have carefully reviewed each of the cases from other jurisdictions cited by defendant and find them all to be distinguishable on their facts; none compel a result different from that reached here. Furthermore, defendant testified at the hearing that he believed the act was committed in self-defense and that he talked to the officers because he wanted to "get it off [his] chest," thus belying the assertion of a desire for an attorney. The record does not support acceptance of defendant's testimony and argument that he, in effect, felt it would have been futile to make a more explicit request for an attorney. Defendant's reliance on *United States v. Womack* (9th Cir. 1976), 542 F.2d 1047, 1051, is misplaced, for there the court's refusal to find a waiver of the right to counsel, even though defendant signed a waiver-of-rights form, was based on defendant's having twice previously been refused counsel after requesting it.

In sum, while we are sensitive to the requirement that authorities refrain from interrogation whenever a suspect invokes his right to counsel, we find that defendant's remarks here did not constitute an invocation of such right. We note that defendant offers no separate reason for us to find his oral statement inadmissible. Thus, our holding applies to both the written and oral statements.

Accordingly, the judgment of the appellate court is affirmed.

*Judgment affirmed.*