Michael J. COX, Appellant,

v.

STATE of Indiana, Appellee.

No. 284–S–43.

Supreme Court of Indiana.

May 19, 1986.

David W. Stone, IV, Anderson, for appellant.

Linley E. Pearson, Atty. Gen., Jay Rodia, Deputy Atty. Gen., Indianapolis, for appellee.

GIVAN, Chief Justice.

Appellant was convicted by a jury of First Degree Murder. The court imposed a life sentence.

The facts are: Ruth Heaton, an elderly and nearly blind widow, was killed during the evening of April 7, 1977. She had been struck five times on the head with a candelabra and rendered unconscious. Her assailant then placed one end of a rope around her neck and the other end of the rope was tied to a doorknob. Strangulation was the cause of death.

Appellant was tried under the theory he aided and assisted the actual assailant, John Drake. Drake was tried first and convicted. His conviction was affirmed by this Court in an opinion reported as *Drake v. State* (1984), Ind., 467 N.E.2d 686.

Appellant had assisted the Heaton family as a handyman prior to the death of Mr. Heaton. After Mr. Heaton's death, Mrs. Heaton's condition required that appellant provide greater assistance. Heaton paid appellant for his services and gave him monetary gifts. Appellant began to tell acquaintances he anticipated receiving a large sum of money at the time of Heaton's death. Shortly before her death, Heaton became less generous with appellant and began to rely on her housekeeper to perform the tasks previously done by appellant.

On the day of her death appellant accompanied Heaton to lunch. He also drove her to the drive-through window of a local bank. Appellant had worked at this branch and was familiar with the tellers and the bank procedures. After Heaton had completed her banking business, appellant gave the teller an $11,000 check and a deposit ticket reflecting a deposit to his account for that amount. The check was drawn on Heaton's account and was made payable to the bank. Appellant told the teller he did not need a receipt and drove away. In 1978 appellant was convicted of uttering a forged instrument for his actions involving this check.

Appellant was the initial suspect in the case. The police found Heaton's garage door opener in appellant's automobile after his arrest. After several days of detention he was released due to a lack of other evidence. In the days following the murder, John Drake and his brother and sister-in-law, Charles and Amy Drake, travelled to Miami, Florida, where Amy owned a condominium. The trio was joined there by John Drake's wife Nancy.

After consuming alcohol and drugs one evening, John Drake became very emotional and told the others that he had killed Heaton while appellant watched and smiled.

Information concerning Drake's statement did not surface for several years. Amy Drake, after becoming concerned that John Drake was interfering in her marriage, called the Anderson police. She told them of Drake's statement. The police then obtained statements from Charles Drake and Nancy Drake. These statements formed the basic evidence in Drake's trial. While investigating Drake's involvement, the police obtained other information linking appellant to the crime. Included was testimony that appellant had been able to describe the interior of Heaton's home as it existed following the murder. This included the position of the body and the nature of the disorder within the room. Appellant had also told others that John Drake killed Heaton. Further testimony placed appellant alone with John Drake on the evening of the homicide and in possession of a garage door opener to the victim's garage.

■ Appellant contends the evidence does not support the conviction. He argues the circumstantial evidence did nothing more than raise the mere suspicion of his guilt. He cites several appellate decisions reversing convictions on sufficiency of evidence grounds.

We do not reweigh the evidence or judge the credibility of the witnesses. When there is substantial evidence of probative value to support the conviction, it will not be reversed. *Brown v. State* (1981), Ind.,

421 N.E.2d 629. The evidence presented above does more than create a mere suspicion of appellant's guilt. Appellant's own statements indicate his involvement. We find sufficient evidence to support the conviction.

■ The trial court granted appellant's Motion in Limine which prevented the State from introducing the testimony of Amy, Charles or Nancy Drake concerning statements John Drake made while at the condominium in Miami. The State then sought, and the court granted, an order certifying an interlocutory appeal on the question of the granting of the Motion in Limine. The court also granted a continuance pending the outcome of the interlocutory appeal.

Appellant then filed a motion for discharge pursuant to Ind.R.Cr.P. 4(B). This was denied and appellant sought a writ to order his discharge. This Court denied the writ in an opinion reported as *State ex rel. Cox v. Superior Court of Madison County, Division III* (1983), Ind., 445 N.E.2d 1367. The Court of Appeals refused to accept jurisdiction on the question of the Motion in Limine. Trial commenced shortly thereafter. The delay pending the appeal totaled nearly nine months.

Appellant now contends the appeal was patently frivolous. He argues the delay occasioned by the appeal did not hamper both sides equally because the police had contemporaneous notes which they could use to refresh their memories. He maintains the delay, coupled with the fact the trial concerned an incident which occurred several years earlier, placed him in a position of unacceptable prejudice. He also advances a public policy argument that the State should not be permitted to use frivolous interlocutory appeals to delay trials and deny criminal defendants their right to a speedy trial.

The State argues the issue of prejudice due to delay is essentially the same question presented to this Court in appellant's mandate action. Although the issue here is couched in different language, the issue of prejudice due to delay is at the heart of

both this question and the one presented in the writ. We hold this question was resolved earlier against appellant's position. There was no error in granting the continuance.

■ Appellant contends the trial court erred when it permitted Detective Levi to testify concerning statements he made to Levi. While appellant was incarcerated following the forgery conviction, Levi informed him of the fact that Amy Drake had made a statement implicating him.

Levi did not carry a standard waiver of rights form with him when he spoke with appellant. Levi did provide appellant with verbal *Miranda* warnings. No recording was made of the conversation. The only memorializations of the meeting were Levi's notes and a report completed after the meeting. Following Levi's statement of rights, appellant indicated he thought he should talk to an attorney. Appellant immediately followed the statement with an inquiry as to what Levi wanted to discuss. Levi told appellant of Amy Drake's statement. Appellant then discussed the murder with Levi. In the course of the conversation, appellant made several incriminating statements. These statements were placed before the judge at a hearing out of the presence of the jury. Only a small portion of the statement was placed in evidence for consideration by the jury.

Appellant argues the statements made to Levi should have been suppressed. He contends they were taken in violation of the rights announced in *Miranda v. Arizona* (1966), 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 and *Edwards v. Arizona* (1981), 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378. We find under the facts of this case Levi did conduct a custodial interrogation of appellant.

■ An accused who is undergoing custodial interrogation and who expresses a desire to have counsel may not be interrogated by the authorities until counsel has been made available. *Edwards, supra.* This right may be waived after its assertion when the defendant has initiated further discussion and knowingly and intelligently waived the right previously invoked. *Smith v. Illinois* (1984), 469 U.S. 91, 105 S.Ct. 490, 83 L.Ed.2d 488.

In the case at bar, appellant's statements at the onset of the interview were ambiguous. In one response he both indicated a desire to converse with the police and to confer with counsel. In light of this ambiguity, we find appellant did not adequately assert his desire to deal with the authorities only through counsel. We adopt the view expressed in *People v. Krueger* (1980), 82 Ill.2d 305, 311, 45 Ill.Dec. 186, 189, 412 N.E.2d 537, 540 which reads as follows:

> "*Miranda's* 'in any manner' language directs that an assertion of the right to counsel need not be explicit, unequivocal, or made with unmistakable clarity. We do not believe, however, that the Supreme Court intended by this language that every reference to an attorney, no matter how vague, indecisive or ambiguous, should constitute an invocation of the right to counsel."

Assuming *arguendo* appellant did assert his right to counsel, his actions in continuing to ask questions of the officer constituted a knowing waiver of the right to counsel.

■ Appellant argues the statements to Levi were the product of a promise of lenient treatment. Levi testified he advised appellant that he could not make any deal at that time. Levi did inform appellant that with full cooperation they could talk later in terms of an agreement. We do not find these statements constituted improper conduct requiring the testimony to be declared inadmissible.

■ Appellant challenges that portion of Levi's testimony in which he related to appellant what Charles and Amy Drake had told him concerning the statements made by John Drake. He argues this testimony by Levi was but a backdoor scheme to receive the testimony by the Drakes which was excluded under the Motion in Limine. He contends the testimony of the Drakes was hearsay and therefore inadmis-

sible. The trial court found the statements were admissible as the testimony was not admitted for the truth of the statements but rather was admitted to show the information conveyed to appellant.

This Court has held "[i]f an out-of-court statement is offered into evidence only as proof of making the statement and not as proof of the matter asserted therein, the testimony as to the out-of-court declaration is not barred by the hearsay rule." *Smith v. State* (1984), Ind., 468 N.E.2d 512, 514. We find the testimony was admitted for the sole purpose of demonstrating that the information was given to appellant prior to his admissions.

Appellant alleges the court failed to admonish the jury concerning the purpose of admitting the exhibit. Any error was waived by appellant's failure to move to admonish the jury or to submit a final instruction on the issue. *Smith, supra.*

■ Appellant offered several comments on his own character. In one statement appellant told Levi he had lied thousands of times. He indicated that if he had not been greedy and pressed for more he most likely would have had it made for life. These statements were admitted with the portions of appellant's admissions. He contends this was error. He argues character evidence was inadmissible as he did not take the stand in his own defense. Secondly, he argues the evidence was immaterial as he was not on trial for being greedy or being an habitual liar.

We do not agree. The statements were a portion of his admission to the officer. A statement which is a part of the *res* of the confession is admissible as long as the statement is germane. Here the two statements provide the context which explain appellant's motives and actions in assisting Drake. We find no error in the admission of the statements.

■ Appellant alleges trial court error concerning John Drake being called by the State as a witness. At the time of the trial, Drake was incarcerated following his trial in the Heaton murder. His appeal was

pending before this Court and he had other charges pending in Madison County. On the advice of counsel, Drake refused to answer any questions during the pretrial proceedings. Prior to the State calling Drake to testify, the court held a hearing on the issue. One of the many issues argued at the hearing was whether Drake would be forced to assert his Fifth Amendment rights in the presence of the jury. The court found it was premature to assume Drake would not testify until such time as he was actually sworn and placed before the jury. Drake was called and, in the presence of the jury, he again asserted his right not to incriminate himself.

The jury was then excused and the court held a hearing on the State's request that Drake be granted use immunity. The court did grant immunity and Drake continued to refuse to testify. The court then found Drake in contempt and had him removed from the courtroom. The court then called Drake's attorney, Mr. Walsh, to the stand. The court questioned Walsh concerning his understanding of the ramifications of granting use immunity. Walsh testified he was aware of the court's position that the granting of immunity negated the Fifth Amendment right against self-incrimination. Walsh also testified he believed the law was unsettled as to the pending appeal and to the other pending charges. Walsh indicated he felt duty bound to advise his client not to testify.

The next day the State dismissed the other charges pending in Madison County and Drake was again called to the stand. This time he did testify. He denied making any statement to his relatives in Florida which incriminated either appellant or himself. The State then called Charles and Amy Drake to testify as to the prior inconsistent statements made by Drake in their presence.

Appellant now argues the court erred when it called Walsh to testify. He contends this action placed Drake's attorney, Walsh, and appellant's trial counsel, Clark, in a position where they feared they

also would be found in contempt of court if they zealously represented their clients.

The court did not directly or indirectly threaten either Walsh or Clark with a contempt citation. We find no merit to appellant's contention that the fear of a possible contempt citation compelled either counsel to refrain from vigorous representation of their client's interests. Appellant's trial counsel displayed great determination as she challenged subsequent court rulings. Appellant has failed to demonstrate he was prejudiced by the representation he received. *See Strickland v. Washington* (1984), 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674.

■ Appellant argues the court erred when it forced Drake to assert his Fifth Amendment right in the presence of the jury. Appellant had argued, at the hearing held before Drake was called, that based on Drake's pretrial activities it was reasonable that Drake would continue to maintain the same position at trial. Appellant cites cases from other jurisdictions which hold actions such as those of the court in the case at bar would be reversible error. Representative of these cases is *People v. Poma* (1980), 96 Mich.App. 726, 294 N.W.2d 221.

In *Aubrey v. State* (1974), 261 Ind. 692, 310 N.E.2d 556, this Court held it was reversible error for the trial court to refuse to admonish the jury in a situation similar to that in *Poma*. *Aubrey* concerned the invocation of the right against self-incrimination by an accomplice.

Subsequent to *Aubrey*, we have held: 1) the State must be aware, prior to the testimony, of the fact the witness will invoke the right, *Spears v. State* (1978), 270 Ind. 12, 383 N.E.2d 282; 2) there must be a contemporaneous objection, *Gurley v. State* (1976), 264 Ind. 552, 348 N.E.2d 16; and 3) an admonishment is a sufficient curative action, *Hovis v. State* (1983), Ind., 455 N.E.2d 577. Appellant contends the State was aware there was an objection and no admonishment was initiated by the court.

We do not agree with appellant's argument. First, appellant did not seek an admonishment although he did object to the testimony. We find the failure to seek an admonishment constitutes a waiver. Further, this argument was rendered moot when Drake took the stand. Thus the jury was not exposed to the "impermissible inferences" which were the concern in *Aubrey*.

■ Appellant contends the trial court erred when it held Drake in contempt. He argues the coercive effect of this action was to compel Drake's testimony. A review of the record in the instant case and of the factual basis of *In re Contempt Findings Against Schultz* (1981), Ind.App., 428 N.E.2d 1284 reveals the cases are nearly identical. There the court said:

"The United States Supreme Court has made it clear that it is only necessary for an immunity statute to supply protection from the perils which the constitutional privilege is designed to guard. In order then to be valid, a grant of immunity need only extend protection commensurate with that afforded by the privilege against compulsory self-incrimination. *Kastigar* [*v. United States* (1972)], *supra* 406 U.S. [441] at 453, 92 S.Ct. [1653] at 1661 [32 L.Ed.2d 212]; *Murphy* [*v. Waterfront Comm'n*, (1964)], *supra* [378 U.S. 52, 84 S.Ct. 1594, 12 L.Ed.2d 678]. Since the object of this privilege is to insure that a person is not compelled, when acting as a witness, to give any testimony which might tend to show he has committed a crime, *Counselman v. Hitchcock*, (1892) 142 U.S. 547, 562, 12 S.Ct. 195, 197–198, 35 L.Ed. 1110, a grant of immunity will be sufficient to supplant this privilege once the witness has been protected against the use of his compelled answers and any evidence derived therefrom, *Lefkowitz v. Turley* (1973) 414 U.S. 70, 78, 94 S.Ct. 316, 322, 38 L.Ed.2d 274, because this use immunity leaves the government in substantially the same position in having the answer but being unable to use it or its fruits as it would have been if the witness had

invoked his privilege and remained silent. *Murphy, supra* at 378 U.S. at 79, 84 S.Ct. at 1609; *Uniformed Sanitation Men Ass'n, Inc.* [*v. Commissioner of Sanitation of City of New York,* (2 Cir. 1970) ], *supra* [426 F.2d 619] at 628. As stated in *Murphy, supra,* 378 U.S. at 77–78, 84 S.Ct. at 1608–1609:

> 'We hold that the constitutional privilege against self-incrimination protects a state witness against incrimination under federal as well as state law and a federal witness against incrimination under state as well as federal law.'

Use immunity is, therefore, constitutionally sufficient." *Id.* at 1288–89.

We find no error in granting of immunity or in the finding Drake was in contempt of court.

■ Appellant contends the trial court erred when it permitted the State to call Drake to the stand. He contends the State was aware Drake would not testify in a manner supporting the State's position. He argues the only purpose for calling Drake was to set up an impeachment of his trial testimony with his prior statements to Charles and Amy Drake. Appellant cites a number of federal cases which hold this is not permissible.

Ind. Code § 34–1–14–15 provides:

> "The party producing a witness shall not be allowed to impeach his credit by evidence of bad character, unless it was indispensable that the party should produce him, or in case of manifest surprise, when the party shall have this right; but he may in all cases, contradict him by other evidence, and by showing that he has made statements different from his present testimony."

*Slayton v. State* (1985), Ind., 481 N.E.2d 1300 and *Taylor v. State* (1984), Ind., 469 N.E.2d 735 are two recent cases which have discussed the issue raised by appellant. In *Taylor,* we said:

> "The State in a criminal prosecution may utilize this statute against one of its own witnesses when the witness has given a prior inconsistent statement. *Ad-*

*ams v. State,* (1974) 262 Ind. 220, 314 N.E.2d 53. The proper foundation for a showing of a prior inconsistent statement is to show the date and place of the prior inconsistent statement and the person to whom it was addressed." *Taylor, supra* at 738.

In *Slayton* we stated:

> "This statute under the last clause, grants the right to a party to impeach his own witness, who has testified against him, by proof of contradictory statements. This grant creates an exception to the general common law rule against such impeachment. According to the case of *Diffenderfer, Executrix v. Scott, N.F.,* (1892), 5 Ind.App. 243, 32 N.E. 87, that general rule has the following basis:
>
> > 'The rules of practice will not permit a party to call a witness closely connected with the adversary's cause, and from whom he has not reason to expect favorable testimony, then to assail the character of the witness by impeachment. By this means the adversary's cause might often be unfairly prejudiced, and justice be thwarted.'
>
> "The statutory right to diverge from the general prohibitory rule may be claimed, when the witness betrays his hostility during examination and his friendliness to the opponent, *and* then has his attention directed to the time and place of the contradictory statement so that he may have the opportunity of admitting or denying it intelligently." *Slayton, supra* at 1303.

Appellant contends the State failed to establish Drake was hostile to the State. He argues the failure of the State to directly question Drake concerning his involvement in the crime demonstrates the State was in reality not interested in Drake's testimony. Rather, he argues, the State was only interested in establishing a forum for his impeachment. He maintains that by failing to ask these questions, the State failed to establish the requisite prejudice to permit the testimony of Charles and Amy Drake for impeachment purposes.

The record shows the State engaged in an extensive examination of Drake. The examination concerned his relationship with both appellant and the members of Drake's family. Drake readily testified concerning his trip to Florida with Charles and Amy and how they met with Drake's wife Nancy. He testified the group was concerned about appellant's initial arrest for Heaton's death. He admitted being at the party when the alleged statements were made. He then firmly denied making any statement admitting his or appellant's involvement in the crime.

We hold the denial during direct examination of the existence of a prior incriminating statement is sufficient to permit impeachment under *Slayton*. Under the facts of this case, the question of whether Drake had made a statement linking appellant and himself to Heaton's death was the central question to Drake's examination. His denial of the existence of the statement was the answer most adverse to the State's interest. This was a sufficient reason to permit the impeachment.

Appellant argues the court abused its discretion when it permitted the State to recall Amy Drake after John Drake had testified. Permitting a party to recall a witness rests within the sound discretion of the trial court. *May v. State* (1975) 263 Ind. 690, 338 N.E.2d 258. In light of John Drake's testimony, we find no abuse of discretion.

█ Appellant argues the trial court erred when it permitted Charles and Amy Drake to testify for impeachment purposes. He maintains: the evidence was admitted not for impeachment purposes but rather as substantive evidence; the statements of the Drakes lacked veracity due to their drug and alcohol consumption that evening; and the probative value of the evidence was outweighed by its prejudicial nature. We disagree with each contention.

Appellant contends the evidence presented by the Drakes was inadmissible as substantive evidence. The trial court agreed and so admonished the jury and also gave a final instruction to that effect.

The trial court was correct in limiting the purpose for which the evidence was admitted. In *Watkins v. State* (1983), Ind., 446 N.E.2d 949, we said:

"We agree with Smith's position that when the witness (out-of-court declarant) denies having made the statement in question or denies having any memory of having done so, the statement is inadmissible as *substantive evidence*, because it obviously cannot be then cross-examined." *Id.* at 960. (original emphasis).

█ Appellant argues that the court permitted, through the actions of the prosecutor and its own instruction, this impeachment evidence to be converted to substantive evidence. We find the instructions only restate the law as expressed in *Balfour v. State* (1981), Ind., 427 N.E.2d 1091. The instructions do not ask the jury to improperly weigh the evidence. There is no error in the instructions.

During closing argument, the prosecutor stated:

"And if you believe that, in fact, that Charles and Amy told you the truth, then you may rely upon that evidence as evidence, substantive evidence. Not for just impeachment, but as substantive evidence in determining whether or not this defendant is guilty or not guilty."

This was an incorrect statement. However, in light of our standard of review of allegations of prosecutorial conduct, we do not find reversible error. In *Maldonado v. State* (1976) 265 Ind. 492, 355 N.E.2d 843, we outlined a procedure for the analysis of this allegation. A portion of the analysis requires this Court to determine whether the defendant was placed in grave peril to which he should not have been subjected. To determine whether grave peril existed, we look at the probable persuasive effect of the conduct on the jury's decision. We are not convinced this misstatement resulted in appellant being placed in grave peril. We find no reversible error.

█ Appellant contends the atmosphere at the party in Miami prevented the impeachment testimony from having the ap-

pearance of trustworthiness required for its admission. The testimony was in conflict as to who consumed what and the amount consumed. Nevertheless, it is clear that alcohol and drugs were consumed by John, Charles and Amy Drake. Appellant's argument goes to the credibility of the witnesses and their testimony.

Appellant argues the probative value of the evidence is exceeded by its prejudicial nature. We do not agree. . The testimony had significant impeachment value. It was not error to admit it.

■ Appellant challenges the appointment of Irma Nave as special prosecutor. He argues she was not eligible or qualified under the statute for the position. Thus he maintains she lacked the authority to request the court to grant Drake use immunity. Nave was a resident of Madison County and a deputy prosecutor in Delaware County.

Appellant cites 1977 Ind.Att'y.Gen.Op. No. 4 for the proposition that a deputy prosecutor must reside in the judicial circuit he/she serves. The eligibility requirements of a special prosecutor are outlined in Ind.Code § 33–14–1–6. In order for a person to qualify he/she must either be the prosecuting attorney or the deputy prosecuting attorney in a county other than the one in which he/she is to serve as special prosecutor. Appellant maintains Nave, as a result of her residency in Madison County, was not a lawful deputy prosecutor in another county. Thus since she was not qualified she lacked authority to request immunity. Further, he contends this failure resulted in the trial court being powerless to hold Drake in contempt as its grant of immunity was a nullity.

■ Nave was a *de facto* public official. Her authority cannot be collaterally attacked. The lack of authority must result in harm to the defendant in order to constitute reversible error. *See Hasselbring v. State* (1982), Ind.App., 441 N.E.2d 514; *King v. State* (1979), Ind.App., 397 N.E.2d 1260.

■ Appellant argues the court erred when it admitted State's Exhibits Nos. 4, 4A, 8 and 11. These exhibits consisted of 250 checks written by Heaton, her checkbook and check records. Appellant contends the exhibits are not relevant to the issue of whether he was an accomplice in Heaton's death. He maintains the sole purpose for the introduction of these exhibits was to demonstrate he lied when he told others that Heaton intended to give him gifts of money. He argues this character evidence was improper as he did not take the stand and his credibility was thus not at issue.

The State argues the exhibits permitted the jury to view the diligent manner in which appellant kept her financial records. The State also maintains Heaton may have discovered a check was missing, accused appellant of the theft and provided a motive for her death.

This Court has held "[r]elevancy is the logical tendency of evidence to prove a material fact. It is a question for the discretion of the trial judge and his decision will be reversed only where clear abuse is shown." *State v. Hall* (1982), Ind., 432 N.E.2d 679, 682. We find no abuse in the admission of this evidence.

■ Appellant argues the trial court erred when it failed to prevent the prosecutor from allegedly misstating the evidence during rebuttal final argument. The prosecutor was reviewing and summarizing the testimony of Dr. Fossum, the coroner who performed the autopsy. The doctor placed the time of death as between 8:30 and 11:30 p.m. on the 7th of April. During cross-examination he indicated the more likely time was closer to 8:30. Fossum testified his opinion was based on a number of factors, including the degeneration of the heart, lungs, spleen and stomach. Dr. Fossum first viewed the body at Heaton's home at approximately 11:30 on the morning of the 8th. He began the autopsy at 1:30 p.m. and did not open the body for internal examination until 3:00. He examined the internal organs in question beginning at 3:40.

During the final argument the prosecutor reviewed this testimony. Appellant contends the prosecutor misstated Fossum's testimony in an effort to place the time of death after the time period covered by his alibi.

The conduct of final argument is within the sound discretion of the trial court. Its decision will not be disturbed, absent an abuse of that discretion. *Newland v. State* (1984), Ind., 459 N.E.2d 384. We do not find an abuse of discretion. The comments of the prosecutor were an analysis of the testimony of Dr. Fossum. The autopsy was performed six years prior to the trial testimony and the doctor was required to rely on his notes and reports from the visual and internal examinations. The prosecutor was simply asking the jury to take into account the delay between the external and internal examinations.

Appellant raises a variety of other challenges to actions by the prosecutor. Appellant acknowledges there were no contemporaneous objections to these alleged errors. The failure to object results in the waiver of all errors. *Roose v. State* (1983), Ind., 449 N.E.2d 594.

 Appellant contends the trial court improperly instructed the jury on the issue of accomplice liability. He argues there was insufficient evidence to support the instructions. At trial he objected on the grounds the instructions were repetitive or that they misstated the law. A party may not raise on appeal an argument different from that presented to the trial court. *Beland v. State* (1985), Ind., 476 N.E.2d 843. We also note appellant's argument would fail on the merits. The factual basis discussed at the onset of this opinion supports the giving of the instructions.

 Appellant contends the trial court erred when it denied his motion to set aside the verdict predicated on misconduct by the bailiff. After the jury had reached its verdict, the foreman contacted the bailiff and inquired as to appellant's age. The foreman told the bailiff they needed the information to complete the verdict form. The bailiff provided this information.

Appellant argues this was improper and cites Ind.Code § 34–1–21–6 which provides:

"After the jury have retired for deliberations, if there is a disagreement between them as to any part of the testimony ... they may request the officer to conduct them into court, where the information required shall be given in the presence of, or after notice to, the parties or their attorneys."

Appellant maintains the determination of his age is one of those factual questions the jury must determine and thus it was error not to comply with the statute. He also cites Ind.Code § 35–37–2–6 for a list of regulations concerning the activities of the bailiff. Subsection (b) prevents the officer from communicating with the jury except in very limited circumstances.

In *McClanahan v. State* (1954), 233 Ind. 365, 118 N.E.2d 734, this Court considered this issue and concluded the finding of the defendant's age was not an indispensable part of the verdict. Thus the defendant was not prejudiced by the actions of the bailiff. The trial court did not err when it refused to set aside the verdict.

The trial court is in all things affirmed.

All Justices concur.