NOTICE
Decision filed 07/09/20. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2020 IL App (5th) 190045-U

NO. 5-19-0045

IN THE

NOTICE
This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellant, | ) | St. Clair County. |
| | ) | |
| v. | ) | No. 17-CF-418 |
| | ) | |
| CHONTEZ L. GRAHAM, | ) | Honorable |
| | ) | Zina R. Cruse, |
| Defendant-Appellee. | ) | Judge, presiding. |

_____

JUSTICE OVERSTREET delivered the judgment of the court.
Justices Moore and Boie concurred in the judgment.

**ORDER**

¶ 1    *Held*: Trial court properly suppressed the defendant's admissions because they followed his request for an attorney, which law enforcement ignored while continuing interview.

¶ 2    During an interrogation at the Jefferson City, Missouri, police department, the defendant, Chontez L. Graham, admitted to shooting to death Anthony "Boogie" Pannell Jr. and his pregnant girlfriend, Amber Bieser. The admission was made during a surreptitiously audio-recorded interrogation by Jefferson City, Missouri, law enforcement and was subsequently repeated to Illinois State Police officers in a video-recorded interrogation room. Thereafter, the State charged the defendant with two counts of first

degree murder (720 ILCS 5/9-1(a)(1) (West 2016)), one count of intentional homicide of an unborn child (*id.* § 9-1.2(a)(1)), and one count of unlawful possession of a weapon by a felon (*id.* § 24-1.1(a)). On the defendant's motion, the circuit court subsequently suppressed the defendant's admissions, finding that the law enforcement officers' tactics rendered the defendant's statements involuntary and violated his fifth amendment rights. U.S. Const., amend. V; Ill. Const. 1970, art. I, § 10.

¶ 3    The State appeals, arguing that the circuit court erred in granting the defendant's motion to suppress because the defendant did not unequivocally invoke his right to counsel and because the defendant initiated further discussion with law enforcement after referencing counsel. For the following reasons, we affirm the circuit court's order granting the defendant's motion to suppress.

¶ 4                                    BACKGROUND

¶ 5    On September 4, 2016, Anthony and Amber were found murdered inside their 2005 Chevrolet Impala in Washington Park, Illinois. Jamie Brunnworth, a special agent in the violent crime unit of the Illinois State Police, was assigned to investigate the murders and interviewed the defendant on September 6, 2016, at the defendant's home in Washington Park, and again on September 16, 2016, at the Illinois State Police Zone 6 Investigative Headquarters. During these interviews, the defendant made no inculpatory statements and was not taken into custody. The Illinois State Police were thereafter unable to locate the defendant until March 2017, when they located him in the custody of law enforcement in Cole County, Missouri. The defendant had been arrested for failing to appear in Cole County on an unrelated case.

2

¶ 6    Accordingly, on March 28, 2017, Agent Brunnworth, along with Agent Derek Weh, interviewed the defendant in a Jefferson City, Missouri, police department video-recorded interview room. The video reveals that during this initial interview, the defendant was read his *Miranda* rights (*Miranda v. Arizona*, 384 U.S. 436, 444 (1966)), signed a waiver, and maintained his innocence, providing information about who he thought was responsible for the deaths. As this interview came to a close, Officer Weh asked the defendant if he were "man enough to go back" knowing that he killed "one of [his] homeboys," and Officer Brunnworth asked the defendant if he wanted them to know anything else before they "walk out of here." Officer Brunnworth noted the time at 11:44 a.m. and told the defendant to "hold tight" for a detective to return him to the county jail. After more than an hour of interrogation, Agents Brunnworth and Weh then concluded the interview and left the defendant in the interrogation room.

¶ 7    The video reveals that a couple of minutes later, Jefferson City, Missouri, Detective Jason Ambler entered the room. The defendant asked if they could take a smoke break, and Detective Ambler stated that he could not because he was interviewing someone next door. As Detective Ambler began shackling the defendant, the following ensued:

> "[Detective Ambler:] Were you honest with them?
>
> [the defendant:] I was.
>
> [Detective Ambler:] Huh?
>
> [the defendant:] Little bit.
>
> [Detective Ambler:] Little bit? Did you leave some important shit out?

3

[the defendant shakes his head]

[Detective Ambler:] Huh? Look at me. Don't lie to me.

[the defendant's inaudible response]

[Detective Ambler:] Hmm? Do you want to talk to me?

[the defendant:] Yea.

[Detective Ambler:] Is it going to be worth my time or are you just going to dick me around? Hmm?

[the defendant:] I'mma gon' get me a lawyer.

[Detective Ambler:] Huh?

[the defendant:] I'm gettin' a lawyer.

[Detective Ambler:] What?

[the defendant:] Get a lawyer.

[Detective Ambler, after a pause:] Well, understand I'm here, whereas they're in Illinois. You know that. You ain't stupid. What I'm telling you is—if you need to talk to me or if you want to talk to me—come hit me up. ***

[Detective Ambler finished shackling the defendant and prepared to leave defendant in the room:] Alright, I'll have somebody take you back up there.

[After approximately 3 minutes, Detective Ambler reenters the room:] I'm finishing up on my other deal. Do you want to go outside?

[the defendant:] Yes sir. Imma talk to you too [inaudible]. Imma talk to you [inaudible] about today ya hear me?"

4

¶ 8    Detective Ambler then escorted the defendant outside to smoke. Unbeknownst to the defendant, Officer Ambler secretly audio recorded his conversation with the defendant during the smoke break. The audio recording begins as follows:

"[Detective Ambler:] Well, hey I'm just gonna holler at you and tell you— that if you—listen to me. *** I have no idea what the hell they're talking about. Ok? I'm gonna hold on to you again so you don't fall. What I am going to tell you is that if you have something you need to get off your chest, it is better to do it within here

[the defendant:] uh huh *** than in the courtroom

[Detective Ambler:] Than—well not only in the courtroom—but—if you're telling it to me and then I tell it to them, I fuck it up."

In the remaining 17-minute smoke break, Detective Ambler suggested that the defendant should "own up to it," that the defendant should "man up," and that "judges and juries" go easier on people who have confessed. Detective Ambler asked the defendant if he did it and what else he knew. In the recording, the defendant ultimately states that he "did it" but that he "didn't know he did it" because he was high on hallucinogenic drugs at the time. The defendant requested that Detective Ambler notify the Illinois officers that the defendant wanted to speak to them again. The defendant also agreed that Detective Ambler would be present in the following interrogation.

¶ 9    After the smoke break, Detective Ambler and Agent Brunnworth returned the defendant to the video-recorded interview room. Agent Brunnworth began the interview by noting the 12:13 p.m. time. Agent Brunnworth stated that she would not read through

the defendant's rights again, but she showed the defendant the *Miranda* rights that he had initialed and signed previously and confirmed that he understood them. The defendant then admitted that he was responsible for the murders. Agent Brunnworth stated that she wanted to verify that, prior to the smoke break, the defendant had stated that he didn't "know if [he] should need an attorney" or something like that. Agent Brunnworth asked the defendant if he was "good with talking to [them] without an attorney present," and the defendant agreed. The defendant then continued his inculpatory statements. Accordingly, on April 21, 2017, the State charged the defendant by indictment with two counts of first degree murder (720 ILCS 5/9-1(a)(1) (West 2016)), one count of intentional homicide of an unborn child (*id.* § 9-1.2(a)(1)), and one count of unlawful possession of a weapon by a felon (*id.* § 24-1.1(a)).

¶ 10    On July 17, 2018, the defendant filed a motion to suppress his statements to Detective Ambler during the audio-recorded smoke break and to Detective Ambler and Agent Brunnworth during the subsequent video-recorded interrogation. The defendant argued that the State derived his inculpatory statements from a combination of deceptive tactics, secret recordings, and undue pressure. In the State's response, the State argued that the defendant made a knowing and voluntary waiver of his *Miranda* rights and that although Detective Ambler's audio recording may have violated Illinois's eavesdropping statute (*id.* § 14-2(a)), Illinois law does not bar its admissibility if made in a single-party consent state like Missouri.

¶ 11    On July 31, 2018, at the hearing on the motion to suppress, Agent Brunnworth testified that the initial March 28, 2017, interview began at 10:41 a.m., and she began the

6

interview by advising the defendant of his *Miranda* rights. Agent Brunnworth confirmed that the interview lasted approximately one hour, that the defendant made no admissions, and that she and Agent Weh ended the interview and stepped out of the room.

¶ 12    Agent Brunnworth also confirmed that she and Detective Ambler conducted a subsequent interview with the defendant after Detective Ambler indicated that the defendant had made admissions during a smoke break. Agent Brunnworth testified that at the onset of the subsequent interview, she showed the defendant the *Miranda* rights form, she asked him if he understood his rights, and the defendant answered in the affirmative. Agent Brunnworth testified that she also asked the defendant if during the smoke break, Detective Ambler had threatened him or promised him anything, and the defendant answered in the negative. Agent Brunnworth acknowledged that she asked this question while Detective Ambler was sitting at the table with the defendant.

¶ 13    Agent Brunnworth testified that Detective Ambler had notified her that the defendant had stated, "I don't know if I should need a lawyer." Agent Brunnworth confirmed that she notified the defendant that she had been made aware that he had made this statement and asked him if he were willing to talk without an attorney present, and the defendant answered in the affirmative. Brunnworth testified that the interview following the smoke break also lasted approximately one hour.

¶ 14    At the hearing, Detective Ambler testified that when he handcuffed the defendant after the initial interview on March 28, 2017, he had anticipated that the defendant would be transported back to the Cole County jail. Detective Ambler testified that based on the defendant's response that he had been "a little" truthful to the Illinois State Police agents,

7

he decided to accompany the defendant outside for a smoke break, during which the defendant's confession was captured with a mini-audio recorder.

¶ 15   Detective Ambler testified that the smoke break lasted about 10 minutes and that he recorded the conversation from the time the defendant was brought from the interview room to the time he was returned to the interview room. Recognizing that at 6 foot 9 inches and 320 pounds he was significantly larger than the defendant, Detective Ambler testified that throughout the course of his time with the defendant, he did not threaten, harm, or consciously intimidate the defendant in any way. Detective Ambler testified that the defendant had preferred that he stay for the second interview that day because they had built a rapport and the defendant felt comfortable talking with him.

¶ 16   Detective Ambler testified that before he took the defendant for the smoke break, the defendant did not request a lawyer. Detective Ambler testified that the defendant was "talking freely[ ] and just questioned himself *** if he should have an attorney." Detective Ambler testified that he ignored the defendant's statement because it was not his job to offer legal advice. Detective Ambler testified that he would not have questioned the defendant during the smoke break if the defendant had stated, "I want a lawyer."

¶ 17   On January 18, 2019, the circuit court entered its order on the defendant's motion to suppress. The circuit court found that Detective Ambler, as a new interrogator in a new environment, should have provided the defendant *Miranda* warnings. The circuit court also found that while Detective Ambler was replacing restraints on the defendant, the

8

defendant invoked his right to representation. The circuit court found that the defendant had stated:

"I'mma gon' get me a lawyer."

"I'm gettin' a lawyer."

"…get a lawyer."

The circuit court further found that the defendant did not make a knowing and intelligent waiver of his privilege against self-incrimination and his right to counsel when he spoke with the out-of-state detective. Accordingly, the circuit court suppressed the defendant's March 28, 2017, audio-recorded and subsequently acquired video-recorded statements. The State filed a timely notice of appeal with an attached affidavit attesting that the circuit court's order substantially impaired its ability to prosecute the case.

¶ 18                                    DISCUSSION

¶ 19    When reviewing a trial court's order on a motion to suppress evidence, we apply a two-part standard of review. We reverse the trial court's findings of fact only if they are against the manifest weight of the evidence, and we review *de novo* the trial court's ultimate legal ruling as to whether suppression is warranted. *People v. Cosby*, 231 Ill. 2d 262, 271 (2008).

¶ 20    A criminal defendant has a constitutional right to counsel at all custodial interrogations, as provided by both the United States and Illinois Constitutions. U.S. Const., amends. V, XIV; Ill. Const. 1970, art. I, § 10; *Miranda*, 384 U.S. at 444 ("[b]y custodial interrogation, we mean questioning initiated by law enforcement officers after a person has been taken into custody"). In *Miranda*, the Supreme Court found that

9

procedural safeguards are necessary to protect the fifth amendment privilege against self-incrimination during custodial interrogation by the police, due to the inherently coercive nature of custodial interrogation itself. *Miranda*, 384 U.S. at 460-61; U.S. Const., amend. V. The now-familiar warnings required by *Miranda* are intended to ensure "that a suspect knows that he may choose not to talk to law enforcement officers, to talk only with counsel present, or to discontinue talking at any time." *Colorado v. Spring*, 479 U.S. 564, 574 (1987).

¶ 21 "*Edwards v. Arizona* further expanded *Miranda* and held that once a person invokes his right to counsel during custodial interrogation, he 'is not subject to further interrogation by the authorities until counsel has been made available to him, unless the accused himself initiates further communication, exchanges, or conversations with the police.' *Edwards v. Arizona*, 451 U.S. 477, 484-85 [1981]." *People v. Villalobos*, 193 Ill. 2d 229, 233 (2000). "This allows the suspect to 'control the time at which questioning occurs, the subjects discussed, and the duration of the interrogation.' " (Emphasis omitted.) *People v. Firestine*, 2019 IL App (5th) 180264, ¶ 12 (quoting *Michigan v. Mosley*, 423 U.S. 96, 103-04 (1975)).

¶ 22 The *Edwards* Court explained that the right to counsel embodied in *Miranda* is sufficiently important that, once a suspect invokes that right, it warrants "the special protection of the knowing and intelligent waiver standard." *Edwards*, 451 U.S. at 483. As such, the Court held that "a valid waiver of that right cannot be established by showing only that [the suspect] responded to further police-initiated custodial interrogation even if he has been advised of his rights." *Id.* at 484. The *Edwards* rule is a rigid " 'bright-line

rule' that *all* questioning must cease after an accused requests counsel." (Emphasis in original.) *Smith v. Illinois*, 469 U.S. 91, 98 (1984) (quoting *Solem v. Stumes*, 465 U.S. 638, 646 (1984)). "In the absence of such a bright-line prohibition, the authorities through 'badger[ing]' or 'overreaching'—explicit or subtle, deliberate or unintentional—might otherwise wear down the accused and persuade him to incriminate himself notwithstanding his earlier request for counsel's assistance" (*id.* (citing *Oregon v. Bradshaw*, 462 U.S. 1039, 1044 (1983), and *Fare v. Michael C.*, 442 U.S. 707, 719 (1979)).

¶ 23    Accordingly, the facts that a suspect made statements with an understanding of his *Miranda* rights and that he initially made a voluntary, knowing, and intelligent waiver of his rights are not always sufficient. *People v. Krueger*, 82 Ill. 2d 305, 310 (1980). "Despite these conditions, if a suspect 'indicates in any manner and at any stage of the process that he wishes to consult with an attorney before speaking there can be no questioning.' (*Miranda v. Arizona* (1966), 384 U.S. 436, 444-45 ***.)" *Krueger*, 82 Ill. 2d at 310. "[E]ven if a suspect initially waived his rights and agreed to talk to authorities, he reserves the right to cut off questioning later by requesting or invoking his right to an attorney." *Id.*

¶ 24    Once a person invokes his right to counsel during custodial interrogation, if the police subsequently initiate a conversation with the accused in the absence of counsel, the accused's statements are presumed involuntary and are inadmissible as substantive evidence at trial. *People v. Woolley*, 178 Ill. 2d 175, 198 (1997). A defendant's waiver of the right to counsel in a further discussion initiated by the police is presumed invalid, and

11

statements obtained pursuant to such a waiver are inadmissible in the prosecution's case in chief. *Id.* The State bears the burden of proving that a defendant's incriminating statements were voluntary. *People v. Quevedo*, 403 Ill. App. 3d 282, 291 (2010).

¶ 25 The State argues that the defendant did not invoke his right to counsel when he ambiguously inquired to himself, after the initial interview with Special Agent Brunnworth, if he should get an attorney. The defendant counters that he articulated his desire for an attorney in a clear enough manner that a reasonable officer in the circumstances would understand the statement to be a request for an attorney, and thus, the officers violated his *Miranda* rights by continuing to interrogate him after he requested counsel.

¶ 26 In *Miranda*, the Court held that if the defendant indicates "in any manner and at any stage of the process that he wishes to consult with an attorney before speaking there can be no questioning." *Miranda*, 384 U.S. at 444-45. *Miranda*'s "in any manner" language directs that an invocation of the right to counsel need not be explicit or made with unmistakable clarity. See *Krueger*, 82 Ill. 2d at 311; see also *People v. Brickhouse*, 2018 IL App (3d) 150807, ¶ 42 (the defendant need not use specific words to invoke the right to counsel). However, not "every reference to an attorney, no matter how vague, indecisive or ambiguous, should constitute an invocation of the right to counsel." *Krueger*, 82 Ill. 2d at 311. The mere mention of a lawyer to police during interrogation is not an invocation of the right to counsel. *Davis v. United States*, 512 U.S. 452, 459 (1994); *Brickhouse*, 2018 IL App (3d) 150807, ¶ 42; *People v. Howerton*, 335 Ill. App. 3d 1023, 1025 (2003). Nevertheless, the police may not continue questioning a suspect

who unambiguously indicates that he does not wish to speak in the absence of an attorney. *Davis*, 512 U.S. at 459.

¶ 27 The test to determine whether a suspect clearly invoked his right to counsel is an objective one. *Id.* At a minimum, to invoke the right to counsel, a defendant must articulate his desire for an attorney to the police in a clear enough manner—free from indecision or double meaning—that a reasonable officer under the circumstances would understand the statement to be a request for an attorney. *Id.*; *People v. Harris*, 2012 IL App (1st) 100678, ¶ 69. If a defendant's alleged request for an attorney is ambiguous or equivocal such that a reasonable officer under the circumstances would understand only that the defendant *might* be invoking the right to counsel, the *Edwards* rule does not apply, and the officers may continue questioning the suspect. *Davis*, 512 U.S. at 452. The Illinois Supreme Court has adopted the *Davis* objective inquiry as the threshold analysis in determining whether a defendant has invoked his right to counsel. *In re Christopher K.*, 217 Ill. 2d 348, 380 (2005).

¶ 28 In this case, at the initial interview on March 28, 2017, the defendant waived his *Miranda* rights before questioning and agreed to talk with the officers without counsel. However, as held by the circuit court, and as shown by the video-recorded interview, the defendant, in response to Officer Ambler's inquiry regarding whether the defendant wanted to talk to him, stated, "I'm gonna get a lawyer," and the defendant thrice repeated his request. See *Howerton*, 335 Ill. App. 3d at 1025-26 (defendant clearly and unequivocally invoked *Miranda* rights when he stated, "Take me upstairs **** or I want a lawyer," and "get me a lawyer" and "let me get my lawyer" and "can I have a lawyer

13

then" and "I'll have to get a lawyer"). After reviewing the testimony and video-recorded evidence in the record, we agree with the circuit court and find the defendant's statement was an unambiguous request for an attorney and a clear invocation of his right to counsel, which was not tainted with hesitation or uncertainty. See *Smith*, 469 U.S. at 92-97 (finding that the defendant's statement, "Uh, yeah. I'd like to do that," which was made immediately after the police had advised defendant of the right to an attorney, was a clear and unequivocal invocation of the right to counsel); *United States v. Lee*, 413 F.3d 622, 623-27 (7th Cir. 2005) (finding that the defendant's statement, "Can I have a lawyer?" which was made just after the police had inquired whether the defendant was willing to talk to them was a clear and unequivocal request for an attorney and an invocation of the right to counsel); *People v. Harris*, 2012 IL App (1st) 100678, ¶ 72 (finding that the defendant's query, whether it was "possible" to "have a few days to get an attorney," constituted an unequivocal invocation of her right to counsel under *Miranda*); *Howerton*, 335 Ill. App. 3d at 1024-27 (finding that the defendant's statement that he either wanted to terminate the interview or wanted an attorney was a clear and unequivocal invocation of his right to counsel). The defendant's statement was neither ambiguous nor equivocal. *Cf. Davis*, 512 U.S. at 461 (holding that the statement "[m]aybe I should talk to a lawyer" did not constitute an unambiguous and unequivocal request for counsel and that the authorities therefore were not required to stop questioning the petitioner); *People v. Oaks*, 169 Ill. 2d 409, 451 (1996) (holding that the defendant's inquiry, "Should I see a lawyer?" was an equivocal request for counsel); *Krueger*, 82 Ill. 2d at 311-12 (holding that the defendant's comments, "Maybe I ought to have an attorney," "Maybe I need a

14

lawyer," or "Maybe I ought to talk to an attorney," were not sufficient indication or manifestation of a desire for an attorney).

¶ 29    The State argues that Detective Ambler's unrebutted testimony at the suppression hearing that he believed the defendant was merely thinking out loud regarding his need for an attorney established that the defendant did not unambiguously invoke his right to counsel. However, the circuit court as the trier of fact is in a position superior to a court of review to observe the conduct of the witnesses while testifying and to determine their credibility (*People v. Parcel of Property Commonly Known as 1945 North 31st Street, Decatur, Macon County, Illinois*, 217 Ill. 2d 481, 507 (2005)), and the circuit court was not required to accept Detective Ambler's interpretation of events, especially in light of the video recording in evidence. *Firestine*, 2019 IL App (5th) 180264, ¶ 15 (any discrepancies between video recording of officer's interview with the defendant and officer's testimony more than a year later must be resolved in favor of what the video shows).

¶ 30    The State also argues that the defendant's assertion that he wished to proceed without an attorney at the outset of his second interview that day with Agent Brunnworth established that the defendant did not previously make a clear and unambiguous invocation of the right to counsel. However, statements in response to further questioning after a request for counsel cannot be used "to cast doubt on the adequacy of the initial request." *Smith*, 469 U.S. at 98-99; *Firestine*, 2019 IL App (5th) 180264, ¶ 31.

¶ 31    The State further argues that the defendant's request was ambiguous because the circuit court determined that the defendant stated, "I'mma gon' get me a lawyer. *** I'm

15

gettin' a lawyer. \*\*\* get a lawyer" but the defendant asserted that he said, "I'm gonna get a lawyer. \*\*\* I'm gonna get a lawyer. \*\*\* get a lawyer." Notwithstanding the *de minimis* differences in the circuit court's and defendant's interpretations of the exchange, after reviewing the record, including the testimony and the audio and video recordings in evidence, we agree with the circuit court's conclusion that the defendant asserted an unequivocal and unambiguous invocation of his fifth amendment right to counsel, triggering the protections afforded by *Edwards.* However, notwithstanding *Edwards'* requirement that the questioning cease, Detective Ambler testified, and the video recording reveals, that he ignored the defendant's invocation. See *People v. Schuning*, 399 Ill. App. 3d 1073, 1086 (2010) ("Defendant did not inquire whether he should call his lawyer or ponder whether he needed counsel; he asked unequivocally to call his lawyer—a request that was unequivocally ignored.").

¶ 32    The State argues alternatively that if the defendant unambiguously invoked his right to counsel, the circuit court erred in failing to consider whether the defendant had reinitiated contact with the officers when he stated to Detective Ambler, "Imma talk to you too, ya hear me? Imma talk to you [inaudible] about today, ya hear me?" The State argues that the defendant's unprovoked statements to Detective Ambler immediately preceding the smoke break constituted initiation of contact by the defendant that allowed further interrogation by police.

¶ 33    The defendant counters that he did not initiate further exchanges with law enforcement. The defendant argues that after he invoked his right to counsel, Detective Ambler ignored his request, initiated further conversation with him by offering to talk to

16

him once the Illinois agents had returned to Illinois, and, after speaking to the Illinois agents and placing a recording device in his pocket, initiated even further conversation by offering to take the defendant to smoke a cigarette outdoors, where he further questioned the defendant.

¶ 34    As noted above, in *Edwards*, 451 U.S. at 485, the Supreme Court held that when an accused invokes his right to have counsel present during custodial interrogation, he may not be subject to further interrogation without the presence of counsel unless "the accused himself initiates further communication, exchanges, or conversations with the police." "If the police subsequently initiate a conversation with the accused in the absence of counsel, the accused's statements are presumed involuntary and are not admissible as substantive evidence at trial." *Woolley*, 178 Ill. 2d at 198. "Any waiver of the right to counsel given in a discussion initiated by the police is presumed invalid." *Id.*

¶ 35    The *Bradshaw* decision set forth a two-prong analysis for applying the *Edwards* rule. *Id.* (citing *Bradshaw*, 462 U.S. at 1044-45). "The preliminary inquiry is whether the accused, rather than the police, initiated further discussion after invoking the right to counsel." *Id.* In order for the accused to "initiate" contact, the accused must make a statement that evinces a " 'willingness and a desire for generalized discussion about the investigation.' " *Id.* (quoting *Bradshaw*, 462 U.S. at 1045-46). Communications that relate to routine incidents of the custodial relationship, such as restroom requests, do not constitute an "initiation" of discussion for the purposes of the *Edwards* rule. *Woolley*, 178 Ill. 2d at 198-99. "If the accused did not initiate a conversation with the police after a request for counsel, statements made in response to further interrogation are inadmissible

17

under *Edwards*." *Id.* at 199. If, however, the defendant did initiate the conversation with authorities, the court moves to the second prong of *Bradshaw*, which is to determine whether the defendant's subsequent waiver of the right to counsel was knowing and intelligent considering the totality of the circumstances, including the fact that the accused reopened dialogue with the police. *Bradshaw*, 462 U.S. at 1044; *Woolley*, 178 Ill. 2d at 199.

¶ 36    The State argues that the defendant reopened communication immediately after telling Detective Ambler that he was going to get a lawyer. However, the video and testimony before the circuit court revealed that immediately after the defendant requested an attorney, Detective Ambler ignored the request and initiated further discussion regarding his willingness to continue to talk to the defendant and, subsequently, to go outside for a smoke break, where the interrogation continued. See *Edwards v. Arizona*, 451 U.S. 477, 487 (1981) (fruits of interrogation could not be used against defendant where officers ceased interrogation after the defendant requested counsel, but without making counsel available, returned to him to talk). The evidence thus disputes the State's claim that the defendant immediately reinitiated further discussion after invoking his right to counsel. *Cf. Woolley*, 178 Ill. 2d 175 (after request for counsel, the defendant immediately reinitiated further discussion by stating "I killed them" or "I didn't do it," which evidenced a willingness for a general discussion of the investigation); *People v. Smith*, 306 Ill. App. 3d 82, 87-88 (1999) (the defendant initiated further discussion with officers, who did nothing, either by word or action, to initiate conversation with the defendant).

¶ 37    Subsequent to the defendant's invocation of his right to counsel during custodial interrogation, Detective Ambler, not the defendant, immediately initiated a conversation despite the request for, and in the absence of, counsel and allowed no break in questioning. See *Woolley*, 178 Ill. 2d at 198. Accordingly, defendant's subsequent statements are presumed involuntary and are not admissible as substantive evidence at trial. *Id.* Moreover, the defendant's subsequent waiver of the right to counsel was invalid because it was obtained during interrogation initiated by the police after the defendant exercised his right to counsel. See *People v. Ravellette*, 263 Ill. App. 3d 906, 913 (1994) (where police allowed no break in questioning, the defendant's waiver was invalid because it was obtained during an interrogation initiated by the police after the defendant exercised his right to counsel). We therefore conclude that the circuit court properly granted the defendant's motion to suppress.

¶ 38                              CONCLUSION

¶ 39    For the foregoing reasons, we affirm the judgment of the circuit court.


¶ 40    Affirmed.